# 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢.

## BROWN V. HALL.

### July 19th, 1888.

1. CHANCERY PRACTICE—*Issue—Bills of exception—Several rulings*— Though, to avoid confusion, it is better to take separate bills of exception to each ruling of the trial court, yet it is allowable in this State to embody in one bill exceptions to several rulings set forth with sufficient particularity.

2. IDEM — *Wills — Issue — Cross-examination—Answer— Case at bar.*—At trial of issue as to genuineness of holograph will charged to be a forgery, the propounder and sole legatee, from whose custody it was produced, and who and his son were the only witnesses of its genuineness, was asked, on cross-examination, if any other person besides himself knew of its execution. He answered that he told three persons, who were named. Motion to exclude this answer as not responsive, overruled;

HELD:
      Error.

3. IDEM—*Evidence—Handwriting—Case at bar.*—At such trial contestant offered to prove, by witness acquainted with handwriting of propounder of holographic will, but not with that of testatrix, that said will was in the handwriting of propounder. On objection, the evidence was rejected;

HELD:
      Error.

Appeal from decree of circuit court of Tazewell county, rendered May 26th, 1886, in the chancery cause wherein O. M. Brown and others were plaintiffs, and Thomas Hall was defendant.

This is a controversy as to whether the following paper, propounded by Thomas Hall as the holograph will of Lydia Hall,

late of Tazewell county, Virginia, is her true last will and testament:

"In the name of God, Amen, I, Lydia Hall, being of sound mind and disposing memory, and being impressed with the uncertainty of human life, and wishing to dispose of what property I have, do make this, my last will and *testimomy, hrby* revoke all former will. I give *ande* bequeath to Thomas Hall all my real and personal property of which I may die seized or possessed. I– witness whereof I have hereto set my hand and seal, this the 20th of October, 1884.

" LYDIA HALL [Seal]."

Lydia Hall died on the — day of ———, 188–, seized and possessed of considerable estate, real and personal, and subsequent to her death, to-wit: at the February term, 1885, of the county court of Tazewell county, her brother, Thomas Hall, produced said papers in court, and the same was admitted to probate as the will of Lydia Hall upon his own testimony and that of his son, A. G. Hall. The order of probate is as follows:

"Virginia: At a county court for Tazewell county, begun and held at the court-house thereof, on Tuesday, February 24th, 1885. On motion of Thomas Hall, who produced a paper in court purporting to be the last will and testament of Lydia Hall, deceased, bearing date the 20th October, 1884, the said will was offered for probate, and the said Thomas Hall and A. G. Hall appeared in court, and being duly sworn, testify and say that they each are well acquainted with the handwriting of the said Lydia Hall, and believe the said will was wholly in her handwriting. Whereupon the said will is received by the court as fully proven, and ordered to be recorded. A copy. Teste, H. B. Harman, D. C." The probate aforesaid was an *ex parte* proceeding had under § 34, ch. 118, Code of 1873, which reads as follows: "A court may, however, without summoning any party, proceed to probate, and admit the will to record, or reject the same. After sentence or order under this section, a person interested, who was not a party to the proceeding, may, within

five years, proceed by bill in equity to impeach or establish the will, on which bill a trial by a jury shall be ordered, to ascertain whether any, and if any, how much of what was so offered for probate be the will of the decedent. If no such bill be filed within that time, the sentence or order shall be forever binding."

In May, 1886, O. M. Brown, Thomas E. Brown, Newton Brown, William F. Brown, A. J. Hall, Perry Buchanan, Ambrose Buchanan, John Buchanan, James Martin and Nannie, his wife, formerly Nannie Buchanan, Eveline Hall, Stephen Fox, Mathias Fox, Percy Fox, Jacob Cameron and Margaret, his wife, formerly Margaret Fox, George McDonald, Gordon Cook, Joseph Cook, M. Elmore and Lydia, his wife, formerly Lydia Cook, Robert Hall, A. J. Hall, Jr., and Elizabeth Harman filed their bill in the circuit court of Tazewell county, alleging that they are the sole and only heirs of Lydia Hall, deceased, except said Thomas Hall; and, after setting forth the death of said Lydia, and that she died seized and possessed of considerable estate, real and personal, the probate of said paper as the last will and testament of Lydia Hall, upon the oath of the propounder thereof, Thomas Hall, and that of A. G. Hall, his son, and exhibiting a copy of said paper, charge that it is not the last will and testament of Lydia Hall, deceased; that it was not written by her either in whole or in part; that it is a fraud and a forgery, and is null and invalid and cannot pass any of the estate of the said Lydia Hall to said Thomas Hall. And the prayer of the bill is, that an issue be directed and made up between the plaintiffs and the said Thomas Hall to determine whether the said paper, or any part thereof, be the last will and testament of said Lydia Hall, and that upon the final hearing the said paper be decreed null and void and not the last will and testament of Lydia Hall, deceased, and for general relief.

At the November term, 1886, Thomas Hall, by leave of court, filed his answer, to which the plaintiffs replied generally, and thereupon the court ordered a trial by jury to ascertain "whether any, and if any how much, of a paper dated the 20th October,

1884, and offered for probate by Thomas Hall, is the will of Lydia Hall"; and thereupon issue was joined.

In his answer, Thomas Hall says: "The charge of forgery alleged in the bill of complainants', your respondent knows to be false and without any foundation whatever, for your respondent is not only well acquainted with the handwriting of his sister, Lydia Hall, but she delivered the paper which has been admitted to probate in the county court, to your respondent in person, as her last will and testament. For many years your respondent and his sister, Lydia Hall, lived together, your respondent nearly always attending to business matters for her; and the son of your respondent also lived with her many years, and only leaving in the summer or fall of 1884, to move on to a small farm which he had purchased. Your respondent furnished his sister, Lydia Hall, with a form for the preparation of a will, which he had procured from counsel about a year before the will was written, and from this, he presumes, the will was in the main written. When respondent's son left his sister's, or about that time, your respondent rented out the land of his sister with the view of her coming to respondent's home to reside with him, but reserved the right in the contract of renting for her to live at her own home if she desired to do so. She remained at her home, however, until the time of her death, with the exception of a few visits. On a visit to his house a few weeks before her death, at which time she remained all night, his sister gave him the will which has been admitted to probate. Your respondent told her he would prefer for some one else to hold it, but she replied that she wanted your respondent to keep it and say nothing about it, as she would be annoyed by the Browns. Your respondent's sister was a delicate woman, very nervous at times and very timid."

The issue, *devisavit vel non,* having been made up as aforesaid, at the November term, 1885, on the motion of Thomas Hall the cause was continued. At the May term, 1886, the issue was tried by a jury. During the trial of said issue the

defendants therein (the plaintiffs in this suit) excepted to certain
rulings of the court in refusing to exclude certain testimony,
and in refusing to admit certain evidence offered by them. The
objections thus taken are set forth in the one bill of exceptions
of the defendants in said issue. The evidence on both sides
having been heard, the jury found the following verdict:

" We, the jury, find the paper offered to us, dated 20th Octo-
ber, 1884, purporting to be the last will and testament of Lydia
Hall, bearing her signature, which has heretofore been probated
in the county court of Tazewell county, to be the last will and
testament of Lydia Hall."

Thereupon the defendants in said issue (plaintiffs in the suit)
moved the court to set aside the verdict of the jury, but the
court overruled the motion, refused to set aside the verdict, and
ordered the same to be certified to the chancery side of said
court, which was done; and the defendants again excepted, and
the court in connection with this exception certified all the
evidence.

At the same time the cause came on again to be heard on the
chancery side of said court, when the following decree was
entered:

"This cause came on to be heard on this, the 26th day of May,
1886, on the former proceedings in the cause, and papers for-
merly read, and the verdict of the jury empannelled at a former
day of this term, and sworn to try the issue directed, and it
appearing from said verdict, which has been certified from the
law side, that the jury found that the paper offered to them, dated
the 20th of October, 1884, signed by Lydia Hall and purporting
to be her last will, and which has heretofore been probated in
the county court of Tazewell as her last will, is the true last
will and testament of Lydia Hall, deceased. It is therefore
adjudged, ordered and decreed that the bill of the complainants
be, and the same is, hereby dismissed, and that the defendant,
Thomas Hall, recover his costs," &c. From that decree the case
is here on appeal.

*Henry & Graham,* for the appellants.

*Williams Bros. & Alderson,* for the appellees.

RICHARDSON, J. (after stating the case), delivered the opinion of the court.

Preliminary to an examination of the questions presented by the bill of exceptions of the defendants in the issue *devisavit vel non,* it is necessary to notice, though very briefly, a question raised in the argument here by counsel for the appellee, who was the plaintiff in the trial of said issue.

The several objections taken by the defendants therein, to the rulings of the court during the trial of said issue, are embodied in one bill of exceptions which is certified by the court. It is objected that, for this reason, the bill of exceptions is not valid. We are clearly of opinion that the objection is not well made. The object of a bill of exceptions is to put upon the record all the facts touching the decisions of the court respecting questions of law, which do not appear upon the record, and which arise in the course of the trial, so that when the case is removed to an appellate court by writ of error, the bill of exceptions may be taken into consideration, and there finally decided, by which the decision of the court below will be affirmed or reversed. Such being the object, it is obvious that it is quite immaterial whether the court certifies one or several exceptions to its rulings in one bill. The term, "bill of exceptions," is in the plural, and, strictly speaking, means, *ex vi termini,* that more than one objection to the rulings of the trial court is embodied in and certified thereby. The usual practice is to certify separately each exception to the ruling of the court, and in such case each one is properly designated "a bill of exception," not a "bill of exceptions." Hence, whether one exception, or more than one, be certified in one and the same "bill" is not material, if each, where there is more than one, is therein distinctly set

forth, with the necessary circumstantiality, and not confused with others therein contained. In the present case, whilst there may not be that clearness and perspicuity of statement always to be desired, yet enough appears to point out not only each separate ruling objected to, but the several grounds of objection. We think this is sufficient; though we think, as a general rule, the better practice, and that least likely to lead to confusion and uncertainty, would be to take separate bills of exception.

I. In the petition for appeal, and in the brief of counsel for the appellants, the first error assigned and treated is the refusal of the court to set aside the verdict found by the jury on the trial of the issue directed, when in the chronological order of things this is the last matter to be considered, as it was necessarily the last ruling of the court objected to.

We will, therefore, first consider the *second* assignment of error as set out in the bill of exceptions. It is to the ruling of the court refusing to exclude from the jury, on the trial of the issue, the answer of Thomas Hall, the propounder of the alleged will, to a question asked him on cross-examination by the counsel of the defendants in said issue. Thomas Hall was asked if any one knew, besides himself, that Lydia Hall had made a will, and he answered that he had told Missouri Davis, Rufus Thompson and Dr. Crockett of the execution of the will. It was this answer that the court was asked to exclude. We are clearly of opinion that the court erred in refusing to exclude it.

The paper in question, purporting to be the last will of Lydia Hall, deceased, was not found among her papers, but came from the possession of Thomas Hall, and upon his motion and on his testimony and that of his son, A. G. Hall, it was admitted to probate in the county court of Tazewell county. At the trial of the issue, at the bar of the circuit court, in this case, these two witnesses alone are introduced to prove that the paper was in the handwriting of Lydia Hall; Thomas Hall, the propounder, being himself the sole beneficiary thereunder, and both of them testifying that they were well acquainted with the handwriting of

the decedent, and that they believed the paper was wholly written by her; yet, on cross-examination, one of these witnesses, A. G. Hall, was handed the paper and asked to read it, and the result was that he could not read a syllable of it.

In his answer to the bill in this suit, Thomas Hall, the propounder, says that Lydia Hall visited his house a *few weeks* before her death, at which time she remained all night; that on this visit she gave him the will which has been admitted to probate; that he told her he would prefer that some one else should keep it, but that she replied that she wanted him to keep it and say nothing about it, as she would be annoyed by the Browns. But in his testimony before the jury he says that *about ten or twelve days* before her death she brought the paper in question to him and told him that it was her will; that she had written it and had willed him all she had; that he said to her that he did not want to keep the will himself, and wanted her to get some one else to keep it; that she said she wanted it kept a secret, and that he must keep it; that if any one knew what she had done it would bring her enemies down on her; that he took the will and locked it up in a drawer, and never let any one see it until he sent it the next day after her burial to his lawyer at Tazewell courthouse to examine; that he did not think the will was any account because his sister had left it in his possession; and that he sent it to his lawyer by his son, Grayson (the said A. G. Hall), to see if it would be considered a good will, and that none of Lydia Hall's other relations and kin ever saw the paper until it was offered for probate in the county court.

These statements—the one in his answer to the bill and the other in his testimony before the jury—are inconsistent in essential particulars; and, to say the least, tend strongly to show either that Thomas Hall had a very treacherous memory, or that he was most reckless in his statements. For in his answer he states that his sister gave him this paper to keep a *few weeks* before her death and during a visit to his house, while in his testimony before the jury he says she *brought it* to him some *ten*

*or twelve days* before her death.   Again, he says that he thought the will invalid because left in his possession; yet on the day after his sister's burial he sent it by his son to his lawyer to see if it was a good will.   It is hardly credible that a man would risk the loss of a considerable estate, about to be honestly acquired, by becoming the custodian of the will by which it was given to him if he really believed that to leave the will in his custody would invalidate it, when the bare suggestion of the difficulty would so naturally have induced the testatrix to obviate the trouble, which she could have done with convenience, certainty and safety.

Moreover, this witness, the sole beneficiary under the paper in question, admits that it was copied from a form procured by him from his counsel some eighteen months before this paper was written, and that hearing his sister, Lydia Hall, say she desired to make a will, he furnished her with the form and told her she could write her own will and no one would know anything about it.   He says that this form was not procured with reference to the will in question, but with the view of enabling his own wife to dispose by will of certain real estate which had been devised to her by her father.

Such are some of the circumstances disclosed by this witness touching the execution of this paper, which was admitted to probate upon his testimony and that of his son.   No friend, neighbor or acquaintance was called on other than this sole beneficiary and his son.   They alone testified that the paper was in her handwriting, and upon that testimony it was admitted to probate.   At the trial of the issue directed in this suit, and in the face of the charge in the bill that it was not the will of Lydia Hall, but was a forgery and fraud, Thomas Hall, the propounder, who held the affirmative and upon whom rested the *onus* of proving that this paper was wholly written by Lydia Hall, offered no additional testimony, but relied solely in this respect upon his own testimony and that of his son.

It cannot be denied that the circumstances were well calcu-

lated to engender doubts in every candid mind whether the paper in question was either in whole or in part written by Lydia Hall, and to invoke the most rigid scrutiny of the court and the widest range of investigation consistent with established rules. In view of the facts and circumstances disclosed by this witness when he was asked on cross-examination if any one except himself knew that Lydia Hall had made a will, and he answered, yes, I told Missouri Davis, Rufus Thompson and Dr. Crockett, and the answer was objected to and the court asked to exclude it as not responsive to the question, it should, for the reason assigned, have been promptly excluded from the jury; and when the court refused to do so, the effect of the answer became doubly damaging to the exceptors. The object of the question was to test the accuracy and truth of the statements made by the witness as to the circumstances surrounding Lydia Hall at the time she is alleged to have written the paper in question, and as to the obligation of secrecy imposed by her upon him when she put the paper in his charge. The inquiry was as to the actual knowledge of others, and not as to what the witness had told others. Instead of answering the question directly, the witness seems to have ingeniously availed himself of the opportunity to inject, as evidence in his behalf, his statements made to third persons, and, if his statement or answer be true, in violation of his sister's request to keep the matter secret. Indeed, this witness, the propounder of the paper, could not, on his behalf, have proved his own declarations to these persons even had he interviewed them for the purpose, and to allow him on the witness stand to testify to his declarations made to others would be to permit him to indefinitely multiply the effect of his evidence. We are, therefore, clearly of opinion that the court erred in refusing to exclude the answer made by the witness to the question aforesaid.

II. We will now consider briefly the appellant's assignment of error, designated as No. 3, which is also set forth in the bill of exceptions. It is that on the trial of the issue, the defen-

dants therein, the plaintiffs in the suit, introduced a witness
(Addison Davis) who testified that he had been acquainted for
many years with Thomas Hall, had seen him write and was ac-
quainted with his handwriting, but was not acquainted with the
handwriting of Lydia Hall; and the writing propounded as the
will of Lydia Hall was handed to the witness, and the counsel
for the defendants in said issue announced their purpose and
ability to prove by the witness (Davis) that the pretended will
was in the handwriting of Thomas Hall, the propounder; to the
introduction of which testimony the plaintiff in the issue ob-
jected, and the court sustained the objection and refused to per-
mit the witness to testify as suggested. It should go without
the saying that this ruling was palpably erroneous. It, in effect,
asserts the anomalous proposition that while it is competent to
prove that a paper propounded as the holograph will of a cer-
tain person is not in the handwriting and was not written by
that person, yet it is not competent to prove that it was written
not by the person by whom it purports to have been written,
but by another and different person, the propounder himself; or,
in other words, that it is not competent to establish the inval-
idity of a paper propounded as the last will and testament of a
person by proving that it was a fraud and forgery, and that it
was forged by the propounder thereof.

It is charged in the bill that the paper in question is not the
last will and testament of Lydia Hall, deceased; that it was not
written by her either in whole or in part, and that it is a fraud
and forgery. Could there be, in the nature of things, any more
conclusive proof of the fraudulent act of propounding as true a
false and forged will, than by establishing by competent evidence,
not only that the paper propounded is false and forged, but that
it was forged by the propounder ? We think not.

In order to the validity of a will, the statute, § 4, ch. 118,
Code 1873, requires that it shall be in writing and signed by
the testator, or by some other person in his presence and by his
direction, in such manner as to make it manifest that the name

is intended as a signature; and unless it be wholly written by the testator, the signature shall be made or the will acknowledged by him in the presence of at least two competent witnesses present at the same time, who shall subscribe the will in the presence of the testator. If the writing is signed by the testator in such manner as to make it manifest that the name is intended as a signature and is wholly written by him, it is a valid will, though it be unattested by witnesses.

The writing here propounded as the will of Lydia Hall, deceased, purports to be wholly written and signed by her. On the trial of the issue *devisavit vel non* directed in this case, the sole question was whether or not the paper in question was the will of Lydia Hall, deceased, or, in the language of our statute, § 34, ch. 118, Code 1873, "whether any, and if any, how much" thereof was her will. The propounder, Thomas Hall, held the affirmative, and the *onus* was upon him to establish the fact that the paper propounded was what it purports to be—the holograph will of Lydia Hall, deceased. To establish this all-important and indispensable fact he was content to rely upon his own testimony and that of his son, when the will came from his possession, he being the sole beneficiary. Thomas Hall having thus rested his case, the defendants therein, to sustain the issue on their part, introduced not less than three witnesses, who testified that they had known the decedent long and well, and that they had had opportunities to be, and that they were, acquainted with her handwriting, and that the paper propounded as her will was not in her handwriting. And the said defendants, to further sustain the issue on their part, offered to prove by a witness that the writing in question was a forgery and in the handwriting of the propounder, but the court, on the motion of the counsel for the plaintiff in the issue, rejected the evidence, and thus arose the question under consideration.

The one thing essential to the validity of every testamentary paper is that it truly expresses the will of a free and capable testator or testatrix. There is in the present case no question

as to testamentary capacity, but there is a most serious question as to whether the paper propounded by Thomas Hall was written either in whole, or in part, by Lydia Hall, deceased. If it was not wholly written and signed by her it is not her will. And so, if it was written either in whole, or in part, by Thomas Hall, the propounder, it is not only not her will, but is a fraud and forgery as charged in the bill. Therefore, while it is sufficient to show by competent evidence that a pretended holograph will is not in the handwriting of the decedent, yet it is perfectly competent and even desirable, when it can be done, to prove by whom it was written, so as to demonstrate the invalidity of the writing, though absolute demonstration is not required, and, in most cases, is not attainable. A witness may, as in this case, be unacquainted with the handwriting of the decedent, and may yet be perfectly acquainted with the handwriting of the propounder of an alleged will, and may be able to testify positively that it is in his handwriting; or a witness may have positive knowledge, independently of his knowledge of the handwriting, that the alleged will is a forgery and was forged by the propounder, or by some other person named. Can it be doubted for a moment that, in either case, the evidence is clearly admissible? We think not; for it is but another and more conclusive mode of showing that the paper was not written by the person whose will it purports to be. It is, too, the most direct and positive way of proving the invalidity of the paper propounded. In many cases it might be extremely difficult, if not impossible, to prove the handwriting of a dead person; for the handwriting of a person may not be sufficiently known to enable any one to testify with any degree of confidence in respect thereof, just as in questions of veracity, it not unfrequently occurs that persons have formed no character or general reputation in respect of which witnesses can be found to testify.

In the present case, the paper propounded as the will of the decedent is surrounded by circumstances of a suspicious character calculated to arouse the jealous scrutiny of the court, and

calling for searching investigation. Yet, in rejecting the evi-dence offered by the defendants in the issue to prove that the paper in dispute is in the handwriting of the propounder, the court practically closed the door against one of the legitimate modes, and the most direct and certain mode, of proving that the paper propounded was not written either in whole, or in part, by Lydia Hall, deceased, and is not her will, but is a fraud and forgery, as charged in the bill.

It cannot be necessary to cite authorities for the proposition that a forged will is fraudulent and void. Nor can it be said that a party contesting the validity of a will is confined to any one mode of proving that the instrument was not written or signed by the decedent, there being more than one legitimate mode of establishing the fact. For example: in the case of *Tucker* v. *Calvert,* 6 Call, 90, the question was as to the validity of a codicil to a will; and it was held that the party objecting to the probate was not confined to an enquiry into the testator's sanity and signature, but might go into evidence as to fraud in obtaining the signature. So, in the present case, the question being as to the validity of the paper propounded as the true last will of Lydia Hall, deceased, it is competent to show that it is invalid as a will by proving either that it was not written by her, or that it is a forgery and was forged by a specified person, whether that person be the propounder or another. We repeat, therefore, that the court erred in rejecting the evidence offered by the defendants in the issue to prove that the paper pro-pounded was in the handwriting of the propounder, Thomas Hall.

As, for the two errors aforesaid, the case will have to go back, it becomes unnecessary to consider at length the appellants' (defendants in the issue) exception to the ruling of the court refusing to set aside the verdict of the jury, &c. In discussing the merits of the exceptions taken by the defendants in the issue to the ruling of the court—first, in refusing to exclude the said answer of the propounder to the question put to him on cross-

examination; and, second, in rejecting the evidence offered by the defendants to prove that the writing propounded was in the handwriting of the propounder—it has been necessary to refer to much of the evidence in order to show the pertinency of the objections taken to the rulings of the court below. But in doing so it is not to be understood that any opinion is intimated as to the weight of evidence before the jury; nor is anything said in this opinion intended to discredit any witness who testified.

For the reasons aforesaid the decree appealed from must be reversed and annulled, the verdict of the jury, found on the trial of said issue, set aside, and the cause remanded to said circuit court with directions to empannel a jury for the re-trial of said issue at the bar of said court, and to be further proceeded in to a final decree in the cause.

DECREE REVERSED.