# Richmond

## J. W. DICKENS, ET ALS. V. MABEL A. BONNEWELL.

March 16, 1933.

Present, Campbell, C. J., and Holt, Epes, Hudgins and Chinn, JJ.

The opinion states the case.

*John W. Happer,* for the appellants.

*R. Triplett,* for the appellee.

CHINN, J., delivered the opinion of the court.

Mabel A. Bonnewell filed her bill in the Circuit Court of the city of Portsmouth at first April rules, 1930, alleging that she is the only child and heir at law of Agnes V. and R. D. Harris; that her mother, Agnes V. Harris, died July 25, 1929, and on August 3, 1929, a paper writing purporting to be her last will and testament was admitted to probate by the clerk of said court, whereby the greater part of her mother's property was devised to complainant's father, R. D. Harris, for his life, with remainder to certain other parties, namely, J. W. Dickens, M. A. Dickens, Lela A. Chichester and Mrs. R. L. Keeter; and all the residue of decedent's property was also given to R. D. Harris.

The bill further alleges that the paper writing so admitted to probate is not the will of Agnes V. Harris, and prays that an issue *devisavit vel non* be made up and tried by a jury, and the order of probate entered by the clerk be set aside. A certified copy of the disputed will, with the clerk's order of probate annexed, was exhibited with the bill.

The beneficiaries named in the alleged will filed their joint and several answers, admitting all the allegations of the bill except that denying the validity of the will, and the issue prayed for was duly made up and docketed.

The beneficiaries will hereinafter be referred to as proponents, and the complainant, Mabel A. Bonnewell, as contestant.

The first trial of the issue resulted in a hung jury. On the second trial, the proponents introduced only one witness, the clerk of the court, who, after reading the alleged will and the order of probate entered thereon to the jury, gave parol evidence of what the subscribing witnesses testified before him at the time the paper was admitted to probate. Upon this evidence the proponents rested. The contestant then moved the court to strike out the evidence

given by the clerk on the ground that it was hearsay and insufficient to establish the validity of the alleged will, which motion was sustained; whereupon, no further evidence being offered by the proponents, the court instructed the jury that the burden was on the proponents to prove that the paper writing in question is the last will and testament of the decedent, and to do so they must establish to the satisfaction of the jury: (1) That the said paper writing was duly executed according to the statutory requirements (specifying them); and (2) that at the time of the signing thereof the said Agnes V. Harris was of disposing mind and memory; and that there was no evidence before the jury proving that the writing introduced in evidence is the last will and testament of Agnes V. Harris.

The jury returned a verdict finding that "the paper writing introduced in evidence is not the last will and testament of Agnes V. Harris," and the court entered an order accordingly. The proponents are now here seeking a reversal of this order of the trial court.

It is contended that the court erred in striking out the evidence offered by the proponents, and in giving to the jury the foregoing instructions. It appears from the petition that this contention is primarily based upon the theory that the *ex parte* order of probate entered by the clerk, of itself, constitutes *prima facie* proof of the due execution of the will and the competency of the testatrix, and that being the case the burden did not rest upon the proponents to prove the validity of the will in these proceedings, but was upon the contestant to overthrow it. In other words, proponents claim they are entitled to stand on the clerk's order of probate as establishing the validity of the will in all respects, and cannot be required to produce further evidence to sustain it until the contestant produces evidence to impeach it; and in the absence of such evidence the validity of the will must be conclusively presumed.

That the parol testimony of the clerk as to what the subscribing witnesses testified before him at the time

the will was admitted to probate is hearsay and inadmissible, is not and cannot be controverted. The real question presented is, therefore (on the issue of *devisavit vel non,* under section 5259 of the Code), what weight and effect, if any, should be given to an *ex parte* order of probate stating that the will was fully proved by the subscribing witnesses, when that is the only evidence produced by the proponents on the trial of that issue?

As far as we have been able to ascertain, this question first arose in Virginia in the leading case of *Coalter's Ex'r* v. *Bryan,* 1 Gratt. (42 Va.) 18, which involved the probate of the will of John Randolph of Roanoke. Upon presentation of the will for probate to the General Court, at its July term, 1836, it was contested by some of the heirs of the testator, but the court gave judgment admitting it to probate, which judgment, on appeal to the Supreme Court of Appeals, was affirmed. In 1840, four years afterwards, certain heirs of the testator, who were not parties to the above mentioned proceedings, filed a bill in equity under section 11, chapter 61, of an act passed by the General Assembly in 1785 (continued without material change in 1 R. C. 1819, section 13, ch. 104, p. 378), making the devisees under the will parties defendant, and praying an issue *devisavit vel non,* according to the provisions of the act.

Section 11 of the act of 1785 provided as follows: "When any will shall be exhibited to be proved, the court having jurisdiction as aforesaid, may proceed immediately to receive the proof thereof, and grant a certificate of such probat. If, however, any person interested shall, within seven years afterwards, appear, and by his bill in chancery contest the validity of the will, an issue shall be made up, whether the writing produced be the will of the testator or not, which shall be tried by a jury, whose verdict shall be final between the parties; saving to the court the power of granting a new trial for good cause, as in other trials; but no such party appearing within that time, the probat shall be forever binding. * * *" This statute was carried

into the Code of 1819 (1 R. C. 1819, p. 378) in substantially the same language, but adding, following the words "forever binding," this clause: "saving also to infants, *femes covert,* and persons absent from the State, or *non compos mentis,* the like period after the removal of their respective disabilities."

When the case came on for trial, the complainants, or opponents of the will, proposed to admit on the record the due execution and publication of the will, but contended that the testator was either insane at the time of its execution, or had subsequently cancelled it, and that they were entitled to open and close the case. The General Court, however, entered a decree directing that a jury be empaneled "to determine by their verdict the issue, whether the testamentary papers admitted to probate in the General Court on the 15th day of July, 1836, is the will of John Randolph, deceased, or not;" and further directing that, on the trial of the issue, the devisees under the will should be the plaintiffs, and the complainants in the bill the defendants. From this decree an appeal was taken to the Court of Appeals, in which the complainants in the trial court were the appellants, and the devisees, or proponents of the will, occupied the position of appellees.

In delivering the unanimous opinion of the court upon the question, Judge Baldwin said (page 83 of 1 Gratt. [42 Va.]): "The court, in my opinion, properly awarded the affirmative to the appellees, they being the propounders of the will, *and having the burthen of maintaining not only the due execution thereof, but the capacity, freedom and final action of the testator, and the continued validity of the instrument in all respects.* Whatever formal affirmatives may be arrayed by the appellants against the proposition incumbent on the appellees, that the writings produced are the true last will and testament of the testator, they do in substance only negative the presumptions in law, or proofs in fact of the requisites to the validity of the instrument." (Italics supplied.)

It may here be observed that in England, at the time of the passage of the act of 1785, the probate of wills of personalty was exclusively vested in the ecclesiastical courts, and were unimpeachable in any other forum, and there was no court of probate of wills of realty. In consequence, the heir, whose title is in its nature legal, had to resort to ejectment against the devisee in order to test the validity of the will, but the burden was put upon the devisee to prove the validity of the will under which he claimed before the heir could be deprived of his inheritance.

In Virginia, prior to the act of 1785, the *ex parte* probate of wills of both personalty and realty was allowed by statute, but where the will devised real estate away from the heirs, they were required to be summoned, and had the privilege of contesting the validity of the will and requiring a reprobate thereof.

The rule laid down in *Coalter* v. *Bryan* was, therefore, only in keeping with the doctrine which had long prevailed both in England and Virginia with reference to wills of realty, and imposed no additional burden upon the proponent of the will.

In discussing the changes in the law on the subject brought about by the act of 1785, the court said: "The obvious purpose of these provisions is: 1, to recognize the *ex parte* probat of wills, both of realty and personalty; 2, to extend the privilege of requiring a *reprobat,* so as to embrace both; 3, to prescribe a period of limitation for such reprobat; 4, to change the citation for *reprobat,* so as to require it to be of those interested in sustaining the will, instead of those interested in opposing it; 5, to shift the *final probat* from the court of original probat to the court of chancery, to be there exercised by the instrumentality of a jury." (Italics supplied.)

That part of the act of 1785 which allows any court having jurisdiction of the probate of wills to admit the same to *ex parte* probate, and a bill in equity to be filed to impeach it upon an issue of *devisavit vel non* is substantially

embodied in section 5259 of the present Code, under which the bill was filed in the instant case. To all intents and purposes the only material changes in the provisions of the present statute relate to the time within which the bill may be filed before the first probate becomes final and unimpeachable, and to the amendments which were made necessary by the new statute (section 5249), which confers jurisdiction upon the clerks of circuit and corporation courts to receive wills for probate. It may at least be said that no alterations have been made in the provisions of the old statute which in any wise affect the question here involved, or the construction given the statute upon which the rule laid down in *Coalter's Ex'r* v. *Bryan* is based.

By more recent decisions, however, the application of the rule (though the rule itself is fully recognized) has been modified in one particular. Thus, in *Rust* v. *Reid,* 124 Va. 1, 97 S. E. 324, a bill was filed under section 5259 praying an issue *devisavit vel non* to determine whether a writing which had been admitted to probate was the will of the decedent. The will was contested on the ground of insanity of the testator and undue influence. It was, in effect, held that the burden of proving testamentary capacity is on the propounder of the will and continues upon him throughout any contest on that question; but, as the law presumes every man to be sane, when the proponent has shown a compliance with all statutory requirements for the due execution of the will, he is then entitled to rest upon the presumption until evidence has been introduced by the contestant to the contrary. It should be noted that the presumption does not arise in the proponent's favor until he has first proved the due execution of the will, and when "the sanity of the testator is put in issue by the evidence of the contestant, the *onus probandi* lies upon the proponent to satisfy the court or jury that the writing propounded is the will of a capable testator." *Hopkins* v. *Wampler,* 108 Va. 705, 62 S. E. 926, 927; *Wallen* v. *Wallen,* 107 Va. 131, 57 S. E. 596; *Kerr* v. *Lunsford,* 31 W. Va. 659, 8 S. E. 493,

2 L. R. A. 668. Subject to this qualification, the rule established in *Coalter's Ex'r* v. *Bryan,* hereinbefore referred to, has been the settled doctrine in Virginia ever since the decision in that case, which, so far as diligent search of our decisions reveals, has never been questioned.

■■ We, therefore, hold that when a will is admitted to probate under section 5249, or section 5259, of the Code, and a person interested, who was not a party to the proceedings, files a bill in equity under the provisons of the last named section to impeach the will on an issue *devisavit vel non,* the burden is on the propounder, on the trial of such issue, to prove the due execution of the will and the competency of the testator as if there had been no probate thereof; and that the *ex parte* order of probate in the instant case does not constitute *prima facie* proof of the validity of the will, as contended by the proponents.

Another phase of the question is presented, however, which it seems necessary to discuss. It is asserted that the *ex parte* order of probate entered by the clerk in the instant case, stating that the will was fully proved by the oaths of the subscribing witnesses, is admissible as evidence to be considered by the jury, and constitutes proof of the due attestation and execution of the will, under the provisions of section 5261 of the Code, which are as follows:

"The record of what is proved or deposed in court by witnesses on the motion to admit a will to record, and any deposition lawfully taken out of court, on such motion, of witnesses who cannot be produced at the trial afterwards before a jury, may, on such trial, be admitted as evidence, to have such weight as the jury shall think it deserves."

Section 5261 has its origin in section 12 of the act of 1785, hereinbefore referred to (continued in section 14, ch. 104, 1 R. C. 1819). This section provided: "In all such trials by jury, the certificate of the oath of the witnesses, at the time of the first probat, shall be admitted as evidence, to have such weight as the jury shall think it deserves."

This provision was afterwards combined with section 5, chapter 92, of the Acts of 1838. The latter section authorized the taking of depositions of subscribing witnesses to a will who, for certain causes, were unable to attend court, and provided that such depositions, "in any subsequent contest about said will, upon an issue before a jury, shall be legal evidence, to have such weight as the jury may think proper." The two provisions so combined became section 36, chapter 122, of the Code of 1849, which has never been changed since that time, and now constitutes section 5261 of the present Code, as above quoted.

Section 12 of the act of 1785 came before the court in *Coalter's Ex'r* v. *Bryan, supra*, for consideration. It appears that one of the assignments of error in that case was the refusal of the chancellor, in making up the issue, to order the evidence of Judge Leigh, given in the probate proceedings in the General Court, which was reduced to writing and made a part of the record in the cause, to be read to the jury on the trial of the issue, in the event of his death or inability to attend the trial. In commenting on section 12 of the act of 1785, the court said the obvious purpose of the provision was, "To provide against the loss of testimony in support of the will, which might result from the delay of the final probat, by authorizing, for the consideration of the jury, documentary evidence of the proof at the first probat." The court held that Judge Leigh was a competent witness, but declined to express an opinion as to the admissibility of his deposition, as it involved a "grave question," and "inasmuch as its decision in the cause may be rendered unnecessary, not only by the personal attendance of the witness on the trial, but by the precaution on the part of the appellees of taking his deposition *de bene esse*."

With the exception of *Coalter's Ex'r* v. *Bryan*, no adjudged case can be found in which this statute (section 5261), or any counterpart thereof, has ever been directly construed, or even commented upon, and, as far as our

decisions disclose, it is now invoked to sustain such a contention for the first time in its history.

There is one case, however, which, though the statute was not relied on or referred to therein, seems to refute the proposition advanced. In *Brown* v. *Hall,* 85 Va. 146, 7 S. E. 182, 183, a writing purporting to be the holograph will of Lydia Hall, deceased, was presented in the county court of Tazewell county by decedent's brother, Thomas Hall, the sole beneficiary named therein, and admitted to *ex parte* probate under section 34, chapter 118, of the Code of 1873, which was as follows:

"A court may, however, without summoning any party, proceed to probate and admit the will to record, or reject the same. After sentence or order under this section, a person interested who was not a party to the proceedings, may, within five years, proceed by bill in equity to impeach or establish the will on which bill a trial by jury shall be ordered, to ascertain whether any, and if any, how much of what was so ordered for probate be the will of the decedent. * * *" As seen, these provisions are incorporated in amended section 5259 of the Code of 1919.

After the admission of the will to probate, other heirs of Lydia Hall filed a bill in equity under the same section, alleging the probate of said writing, that the same was a forgery, and praying an issue *devisavit vel non* to determine the question. A copy of the *ex parte* order was filed in the proceedings, which read as follows:

"On motion of Thomas Hall, who produced a paper in court purporting to be the last will and testament of Lydia Hall, deceased, * * * the said will was offered for probate, and the said Thomas Hall and A. G. Hall appeared in court, and being duly sworn, testify and say that they are each well acquainted with the handwriting of the said Lydia Hall, and believe the said will was wholly in her handwriting, whereupon the said will is received by the court as fully proven and ordered to be recorded."

On the trial of the issue the jury found in favor of the

will, and the case was brought before the Supreme Court of Appeals by the contestants, on exceptions taken to the rulings of the trial court in relation to the admission and rejection of certain evidence.

In an elaborate discussion of the evidence and the questions presented, the appellate court, in the course of its opinion reversing and remanding the case, said: "The writing here propounded as the will of Lydia Hall, deceased, purports to be wholly written and signed by her. On the trial of the issue *devisavit vel non* directed in this case the sole question was whether or not the paper in question was the will of Lydia Hall, deceased, or, in the language of our statute (section 34, chapter 118, Code 1873), 'whether any, and if any, how much' thereof was her will. The propounder, Thomas Hall, held the affirmative, and the *onus* was upon him to establish the fact that the paper propounded was what it purports to be—the holograph will of Lydia Hall, deceased."

In connection with the above excerpt, it should be observed, as will be seen from a careful reading of the opinion, that notwithstanding the fact that the *ex parte* order entered by the county court set forth the evidence upon which the will was "received as fully proven" and admitted to probate therein, said order was neither relied on by the proponent as evidence to sustain the will, on the trial of the issue before the jury, nor considered by the appellate court on the appeal. On the other hand it appears that when the issue *devisavit vel non* was tried in the lower court, the proponent assumed the burden of proof, and relied solely on the parol testimony of himself and another witness to prove that the paper in controversy was in the handwriting of the deceased.

In view of these facts and the principles of law stated by the court as applicable to the case, we think it may be said that, although the question we now have under consideration was not directly decided in *Brown* v. *Hall,* it was, in effect, held in that case that the *ex parte* order of

probate could not be considered as evidence so as to relieve the proponent of the burden of proof on the trial of the issue *devisavit vel non,* but the burden was upon him, on the trial of said issue, to prove the validity of the will as if the same had never been admitted to probate.

██ Considering section 5261 in the light of the construction put upon the old statute in *Coalter* v. *Bryan*—which is equally applicable to the present section—and the other decisions referred to, it seems clear to us: (1) That the statute was intended to admit as evidence on the trial of an issue *devisavit vel non* "the record" of the testimony of only those witnesses who gave evidence in court at the time of the first probate and the depositions of only those witnesses lawfully taken out of court at the first probate, who on account of death or other good cause cannot be produced at the trial of said issue; and (2) that, even when the *ex parte* order of probate can be considered admissible as evidence under the statute, such order does not shift the burden of proof but it is still incumbent upon the propounder to introduce evidence sufficient to prove the due execution and validity of the will in dispute.

██ To say that, on the trial before the jury, the will may be proved by documentary evidence of what the witnesses testified at the time the will was admitted to *ex parte* probate, instead of calling such witnesses when they are available, would nullify the elementary rule that the best evidence must always be produced, and also deprive the contestant, who was not a party to the original proceedings, of the right of cross-examination. This was not the purpose of the statute.

██ When, if at all, an *ex parte* order of probate can be considered a "record of what was proved or deposed" in court so as to fulfil the purposes of the statute, it is unnecessary for us to decide, and upon that question we express no opinion. We will, however, go so far as to say that the order of the clerk, in the instant case, is not, in our opinion, such a "record." The order merely states that

the will was "fully proved by the oaths of the subscribing witnesses thereto (naming them), and was thereupon ordered to be recorded." This is not a record of what the witnesses proved or deposed, but simply the conclusion reached by the clerk upon the evidence given before him. Neither does it appear that the subscribing witnesses could not be produced at the trial of the case before the jury. Our conclusion is, therefore, that the order entered by the clerk is entitled to no weight as evidence, and there being no other evidence introduced by the proponents before the jury, the instructions given by the court were plainly right.

■ The action of the court in changing the verdict, as written by the jury, is assigned as error. It appears that the change in the verdict by the court related only to the form and not the substance thereof, that it was read to the jury, approved by them, and signed by the foreman before the jury was discharged, and was in accordance with the instructions given by the court. We, therefore, find no merit in this assignment.

The remaining assignment of error relates to the refusal of the court to set aside the verdict and grant a new trial. This assignment requires no discussion.

For the reasons stated, we are of opinion that the decree of the trial court must be affirmed.

*Affirmed.*

EPES and HUDGINS, JJ., dissenting.

HUDGINS, J., dissenting:

It is with regret that I am unable to concur in the decision of the majority in this case.

The legal evidence consists of a paper writing purporting to be a will, regular on its face, with the name of the testatrix attached in the usual place for the signature, containing a complete attestation clause, with the names of two subscribing witnesses subjoined thereto, and the order of the clerk stating that the will was fully proven before him

by the oaths of the subscribing witnesses. The record further shows that the real attack on the validity of the will was based on the incompetency of the testatrix. This, in my opinion, is sufficient to affirm the order of probate.

Code, section 5261, which is copied in the opinion, means something. It is not a mere combination of words adopted by the legislature, with no purpose in view. The majority opinion here, as in *Coalter* v. *Bryan,* 1 Gratt. (42 Va.) 18, goes rather fully into the history of the legislation, but, as in that case, declines to give any force and effect to this particular enactment.

In *Coalter* v. *Bryan, supra,* the court decided the issues before it on other grounds, and the reference to the statute as then in force was *dictum.* In the present case, the decision turns upon the meaning given to this particular statute, and hence its construction is vital.

Both in England and in the early decisions of this court, a decided preference was shown for the heir over the devisee. Upon the latter is placed the burden of showing a better right to the land than the former. Modern decisions fully recognize the right of a testator to dispose of his property as he pleases, and it is only when the disposition of the estate, within certain limitations, is not the free will of a normal mind that the court will interfere. The preference alluded to is revealed in the opinion of Judge Baldwin in the case cited above.

In that case, one of the assignments of error was the failure of the chancellor, in making up the issue, to state whether or not Judge Leigh was a competent witness, and his failure to order the deposition of Judge Leigh, taken before the General Court, to be read to the jury. The appellate court held that Judge Leigh was a competent witness, but declined to rule on the admissibility of his deposition. Mr. Conway Robinson, in his argument on this point, said:

"It seemed to them (the legislature) that whether the witnesses who testified in the court of probate were dead

or alive, no injury could result from letting the record of their testimony go to the jury that might try the issue, to have such weight as they might think it deserved. And hence the provision in the act in 1 R. C. 1819, p. 378, section 14 (same as section 12 in act of 1785). This provision does not in the least change the nature of the issue, or the relation of the parties to it. The legatees and devisees still affirm that the will is valid; the next of kin and heirs that it is not. The former are the plaintiffs, and the latter the defendants in the issue; and upon the former it is incumbent to introduce evidence to establish the validity of the will. As a part of that evidence, the certificate of the oaths of the witnesses at the time of the first probate is admissible; but this does not necessarily make out their case; or even a *prima facie* case; it has such weight and such only, as the jury shall think it deserves."

This analysis of section 12 was neither repudiated nor affirmed by the court. Mr. Robinson was one of the two revisors of the Code of 1849, and in codifying this provision of the act of 1785 it was combined with a part of section 5 of chapter 92 of the Acts of 1838. The latter section authorized the taking of depositions of subscribing witnesses to a will, who, for certain causes, were unable to attend court, and provided that such depositions "in any subsequent contest about said will, upon an issue before a jury, shall be legal evidence, to have such weight as the jury may think proper." The two provisions, so combined, became section 36, chapter 122 of the Code of 1849, as follows:

"The record of what is proved or deposed in court by witnesses on the motion to admit a will to record, and any depositions lawfully taken out of court, on such motion, of witnesses who cannot be produced at a trial afterwards before a jury, may on such trial be admitted as evidence to have such weight as the jury shall think it deserves."

There has been no change in this provision since that

time. It was carried in the Code of 1887 as section 2546, and is now section 5261 of the Code of 1919.

The majority opinion discusses at some length the case of *Brown* v. *Hall*, 85 Va. 146, 7 S. E. 182, 183, and concludes the discussion by stating that although the question here presented was not then under consideration, that case held that an *ex parte* order of probate could not be considered as evidence "so as to relieve the proponent of the burden of proof on the trial of the issue *devisavit vel non.*"

I do not think that case can be considered as any authority for the conclusion that the record of the order of probate is not entitled to be received and weighed by the jury in determining the issue *devisavit vel non.* The bill attacking the will alleged it was a forgery. The will was holographic and the order of probate showed that it was admitted to probate on the testimony of "Thomas and A. G. Hall (who) appeared in court, and being duly sworn, testify and say that they each are well acquainted with the handwriting of the said Lydia Hall, and believe that the said will was wholly in her handwriting."

It does not appear from the opinion just how the order of probate became a part of the evidence in the case, but it does appear that A. G. Hall, who testified in behalf of the will in the *ex parte* probate, was called as a witness on the issue before the jury, and by his testimony and his acts when on the stand it was shown that he was unable to read. When this fact was considered with the order itself it was sufficient to cast serious doubt on his credibility, either before the probate court or the jury. The only other witness who testified for the proponents in either court was Thomas Hall, the propounder and beneficiary under the will.

The opponents of the will offered evidence tending to prove that the paper purporting to be the will of the testatrix was wholly in the handwriting of Thomas Hall. This evidence was excluded by the trial court. This court stated that, "If it (the will) was not wholly written and signed by her it is not her will; and so, if it was written either in

whole, or in part, by Thomas Hall, the propounder, it is not only not her will, but is a fraud and forgery as charged in the bill. Therefore, while it is sufficient to show by competent evidence that a pretended holograph will is not in the handwriting of the decedent, yet it is perfectly competent and even desirable, when it can be done, to prove by whom it was written, so as to demonstrate the invalidity of the writing, though absolute demonstration is not required, and, in most cases, is not attainable."

Regardless of how the order of probate became a part of the evidence, its contents come within the strict letter of Code, section 5261. The material part of the order of probate in the case under consideration reads as follows:

"The last will and testament of Agnes V. Harris, late of this city, deceased, was this day produced before me by R. D. Harris, the executor therein named, and fully proved by the oaths of W. Scott Parker and Bessie P. Mullen, subscribing witnesses thereto, and was thereupon ordered to be recorded."

This order became part of the evidence in this case under the following circumstances: The clerk who probated the will was called as a witness by the proponents, and while on the stand, after identifying and reading his order of probate, he stated, in reply to a question, what the subscribing witnesses had said in their testimony before him. Objection was made to his answer, and later motion was made to strike it from the consideration of the jury. In making the motion, the attorney for appellees stated that "the only thing proven by the proponents is the proper probate of the will, and as the court sustained me in my motion to strike out the hearsay evidence there is no evidence of the testamentary capacity." It therefore affirmatively appears that there was no objection to the introduction of the order of probate and no motion was made to strike it from the consideration of the jury.

Eliminating that part of the statute which is not germane to the question, it reads thus: "The record of what is

proved * * * may, on such trial, be admitted as evidence, to have such weight as the jury shall think it deserves."

Even if it be held (the majority does not so hold) that the word "may" in the statute gives to the trial court discretion in admitting or rejecting the record, in this case it is a part of the evidence, without objection, and remained before the jury with no evidence to contradict it. However, the instruction of the court prevented the jury from giving it any consideration.

In *Brown* v. *Hall, supra,* the order contains a brief summary of the testimony of the witnesses before the probate court. The majority opinion draws a distinction between that order and the one in the case at bar. The order here states that the will was "fully proved by the oaths of" the subscribing witnesses. Both are valid orders of probate and if not attacked within the specified time become final. When a court of competent jurisdiction enters a formal order stating that a will is fully proven by the oaths of the subscribing witnesses, it can only mean the due execution of the will, which, for a non-holographic will, is that the testator signed or acknowledged the signature in the presence of two witnesses, who at his request and in his presence and in the presence of each other, subscribed their names thereto as witnesses. To admit the order in one case as evidence for the consideration of the jury and deny it in the other, would make the form of the order, rather than the substance, the test of its admissibility. To make such a refined distinction would serve no good purpose, and might work incalculable hardship in establishing muniments of title to property.

Due execution of a will, when proven, raises a presumption of sanity, and is sufficient, in the absence of evidence to the contrary, to establish the same. *Rust* v. *Reid,* 124 Va. 1, 97 S. E. 324; *Culpepper* v. *Robie,* 155 Va. 64, 154 S. E. 687; *Hentz* v. *Wallace,* 153 Va. 437, 150 S. E. 389. In the case at bar, the will is regular on its face, contains a complete attestation clause, and recites compliance with all

the statutory requirements for the due execution of a non-holographic will, to which is subjoined the names of the two subscribing witnesses.

In a note found in 76 A. L. R., page 617, this is said: "It is a well-established rule that a complete attestation clause reciting the observance of all statutory requirements raises a presumption of the due execution of a will if there is no contest as to the genuineness of the signature of the witnesses, or that of the testator, or after these signatures are proved to be genuine."

It was not claimed in the case at bar that the signatures of the testatrix and the subscribing witnesses were not genuine. It was stated in the record, and not denied, that the only ground of contest was as to the competency of the testatrix. If any weight at all is given to the record of the *ex parte* proceeding, and the statute states distinctly that it shall have such weight as the jury thinks proper, it is sufficient to affirm the order of probate. To hold otherwise would result in setting aside a will which has been duly probated before a court of competent jurisdiction, without a scintilla of evidence tending to show any irregularity in execution, or otherwise, and deprive the proponents of the presumption of sanity.

EPES, J., concurs in this dissent.