# Staunton

## Novella M. Franklin, Et Als. v. E. F. McLean, Et Als.

September 5, 1951.

Record No. 3788.

Present, Eggleston, Spratley, Buchanan, Miller and Whittle, JJ.

The opinion states the case.

*Campbell & Campbell* and *Ralph R. Repass,* for the appellants.

*H. P. Burnett, C. H. Funk, E. Sam Burnett, Jr.,* and *Lewis Preston Collins,* for the appellees.

EGGLESTON, J., delivered the opinion of the court.

E. F. McLean and other heirs at law of Nannie McLean Copenhaver, deceased, filed their bill in equity under Code, § 64-84, to impeach and set aside a certain paper writing which had been admitted to probate *ex parte* by the Circuit Court of Smyth county (Code, § 64-81) on November 8, 1948, as the last will and testament of the decedent. The plaintiffs alleged that the paper writing was not the decedent's "true last will and testament" because it was "found among her repositories, in her possession, in a canceled and mutilated condition by being marked over and across the writing on the face thereof with a pencil, having the effect of canceling and revoking said paper in so far as it might otherwise have been her last will and testament."

After answers had been filed asserting the validity of the will, the court ordered that an issue be made up and tried by a jury to determine whether the writing was the decedent's true last will and testament, and that on such trial the proponents "should maintain the affirmative" and the contestants the negative.

At the conclusion of proponents' evidence and upon their announcement that they had rested, the contestants moved to strike proponents' evidence. This motion was fully argued and finally sustained.

After the decision of the trial court on the motion to strike had been announced the proponents asked leave to reopen the case for the presentation of further evidence. This was denied and the court, adhering to its view that the evidence was insufficient to sustain a verdict for the proponents, so instructed the jury, with the result that a verdict for the contestants necessarily followed. From the decree entered upon that verdict the present appeal has been taken.

The underlying facts and circumstances are brief and undisputed. Nannie McLean Copenhaver, a widow who had no children, was a resident of Smyth county and lived alone for a number of years. On November 9, 1945, she went to a hospital at Marion where she remained for several months, prior to her death which occurred on October 6, 1947. While Mrs. Copenhaver was in the hospital she engaged Mrs. Bessie Conner, a niece by marriage, to live in the home.

On August 3, 1946, R. C. Gwyn, a member of the local Bar and a cousin of Mrs. Copenhaver, at the request of John McLean, a brother of Mrs. Copenhaver, went to see her in the hospital "about some valuables in her home." She told Gwyn to go to her residence and remove from a closet certain papers which he would find there and which she desired him to take care of for her.

Pursuant to this request Gwyn, accompanied by John McLean and several others, went to the Copenhaver residence. Mrs. Conner either gave Gwyn the key to the closet or unlocked it for him. In the closet, in a large zipper bag used for mothproofing clothing, they found about $26,000 of government bonds, $1,050 in currency, and certain other stocks, bonds and notes. The total value of these securities amounted to approximately $60,000. In the presence of those gathered there Gwyn made a list or inventory of these securities. Among the articles found in the zipper bag was an envelope, marked in her own handwriting, "Mrs. Nannie M. Copenhaver," and containing the purported will.

The purported will, which is before us as an original exhibit, is written in ink, in a clear, firm hand, dated October 10, 1929,

and signed "Nannie McLean Copenhaver." The undisputed evidence is that this paper, including the signature, is wholly in the handwriting of Mrs. Copenhaver.

Across the face of the paper are a number of pencil marks and lines. Some of these lines are straight, or nearly so, and others are circular in character. The pencil lines extend through each and every line of the will, including the signature thereto. The uncontradicted evidence is that the purported will was in this condition when it was found among Mrs. Copenhaver's valuables.

The provisions of the purported will may be summarized thus:

The sum of $1,000 was set apart for the perpetual care of the family lot in the Round Hill Cemetery at Marion, and for the comfort of needy children of the town. The white ministers of the several churches were asked to distribute this gift at Christmas.

The sum of $1,000 was given to the Marion Presbyterian Church, and the same amount to the Children's Home Society of Virginia.

Mrs. Elizabeth Vaughan, a sister of the decedent, was left a life estate with power to encroach on the principal for her support if needed. At her death the entire estate, subject to the bequests above-mentioned, was to go to three daughters of a deceased brother.

There were directions as to the sale of real estate and administration of the property.

The first assignment of error is that the lower court erred in striking the proponents' evidence on the ground that it was insufficient to sustain a finding that the paper writing was the true will and testament of the decedent.

It is not disputed that the paper writing, if not revoked, meets the requirements of a holographic will. Code, § 64-51. The contest is as to whether the evidence which has been related shows, as a matter of law, that the will had been revoked by cancelation in some manner required by Code, § 64-59.[1]

---

[1] "§ 64-59. *Revocation of wills generally.*—No will or codicil, or any part thereof, shall be revoked, unless under the preceding section, or by a subsequent will or codicil, or by some writing declaring an intention to revoke the same, executed in the manner in which a will is required to be executed, or by the testator, or some person in his presence and by his direction, cutting, tearing, burning, obliterating, canceling or destroying the same, or the signature thereto, with the intent to revoke."

As is pointed out in *Thompson* v. *Royall*, 163 Va. 492, 497, 175 S. E. 748: " * * * revocation of a will by cancellation within the meaning of the statute, contemplates marks or lines across the written parts of the instrument, or a physical deface-ment, or some mutilation of the writing itself, with the intent to revoke. * * * "

"It is generally agreed that if a will produced for probate, which is shown to have been in the custody of the testator after its execution, was found among the testator's effects after his death, in such a state of mutilation, obliteration, or cancelation as represents a sufficient act of revocation within the meaning of the applicable statute, it will be presumed, in the absence of evidence to the contrary, that such act was performed by the testator with the intention of revoking the instrument. * * * Whatever presumption arises from acts of cancelation or mutilation is rebuttable, but the burden of the rebuttal rests upon the proponent." 57 Am. Jur., Wills, § 550, pp. 378, 379.

In *Wilkes* v. *Wilkes*, 115 Va. 886, 897, 80 S. E. 745, we held that where a line had been drawn through certain words in a holographic will which had been in the custody of the testator prior to his death, and there was no evidence as to how, when, or by whom the mark had been made, it would be presumed that the act of striking out the words was done by the testator's own hand.

By the great weight of authority in this country the presumption of cancelation for the purpose of revocation is not to be refused merely because the cancelation lines were made with a lead pencil. A will written by pen may be canceled effec-tively by pencil. 57 Am. Jur., Wills, § 550, p. 379; *Id.*, § 504, p. 350; Page on Wills, Lifetime Ed., Vol. 1, § 429, p. 775, and cases there cited; *La Rue* v. *Lee*, 63 W. Va. 388, 60 S. E. 388, 129 Am. St. Rep. 978, 14 L. R. A. (N. S.) 968.

" * * * The presumption that acts of mutilation or cancelation performed upon the propounded instrument were done by the testator with intent to revoke it does not prevail in the absence of evidence that the testator was in possession or custody of the instrument between the time of its execution and the time of his death. The presumption, however, is not de-pendent upon proof that the will was in any particular place, provided it is somewhere in the personal effects of the deceased, or in *her* sole custody, and not in the possession of others. The

instrument, moreover, need not have been in the exclusive custody of the testator in order for the presumption to prevail. If it appears that the instrument was in a repository accessible to the testator and another person, it will be presumed that a mutilation or cancelation of the instrument was done by the testator with intent to revoke. * * * " 57 Am. Jur., Wills, § 551, pp. 379, 380.

Clearly, we think, a physical inspection of the original will before us shows that a revocation has been effected according to these principles. As has been said, the pencil lines are clearly drawn through every part of the will, including the signature of the testatrix. These marks are sufficient to effect a cancelation of the instrument if they were placed there by the testatrix with that intent. There is an entire lack of evidence as to how, when, or by whom the marks or lines were made.

The will was found along with valuable securities in the locked closet in the bedroom of the testatrix. While it is true that Mrs. Conner for a while had the key to this closet there is no evidence whatsoever that she entered it, that she knew the will was there, or that she or any other person made the marks on the instrument.

■ Thus, it will be presumed that these marks were made by the testatrix with the intention of revoking the instrument. Since the proponents offered no evidence to rebut this presumption, it stands unshaken and must prevail.

■ Nor is the proponents' case strengthened by their offering in evidence the *ex parte* order of probate of the will in the Circuit Court. In *Dickens* v. *Bonnewell*, 160 Va. 194, 202, 168 S. E. 610, we held that in the trial of an issue *devisavit vel non* the *ex parte* order of probate did not constitute *prima facie* proof of the validity of the will as contended by the proponents there.

The second assignment of error is that the lower court erred in not permitting the proponents to reopen their case and offer additional evidence after the motion to strike had been sustained.

The record shows that the proponents offered two witnesses to prove that the paper writing met the requirements of a holographic will. These witnesses also related the circumstances under which the writing had been found among Mrs. Copenhaver's valuable securities. Counsel for the proponents then

said: "We offer this paper writing and order of probate thereon as the last will and testament of Mrs. Nannie Copenhaver."

Then followed this colloquy:

"The court: It has already been filed as a exhibit?

"Mr. Campbell: Yes, it was filed and identified, yes, sir. Your Honor admits it?

"The court: Yes, sir.

"Mr. Campbell: All right, sir. The proponents rest."

As has been said, the contestants then moved to strike the proponents' evidence as being insufficient to sustain the validity of the will. After full argument, which is found in the printed record, the issue was submitted at the afternoon adjournment hour.

The court took the matter under advisement and upon the opening of the morning session, on the next day, read into the record an opinion giving its reasons why it had reached the conclusion that the motion should be sustained and the jury instructed that there was no evidence before them upon which they could base a verdict for the proponents.

Then, for the first time, counsel for the proponents moved the court for permission to reopen the case and offer additional evidence which they said would tend to show that the testatrix had not revoked the will. This evidence, it was said, would consist of, (1) competent medical testimony that the testatrix for a substantial period of time before she went to the hospital was not in a mental condition to transact business or "to revoke a will;" (2) declarations of the testatrix on various occasions that she did not intend to leave her brother and other relatives, except the beneficiaries in this will, any of her property; and (3) declarations of the testatrix showing her favorable attitude toward those named as beneficiaries in the will.

The lower court did not pass upon the admissibility of the tendered evidence or its sufficiency to overcome the presumption of revocation. It held that the proponents' offer to put on additional evidence came too late after they had submitted their case upon the sufficiency of the evidence already adduced and that issue had been decided adversely to them.

In support of their contention that they should have been permitted to reopen the case and put on additional evidence, counsel for the proponents say that when they offered the purported will and the *ex parte* order of probate and inquired,

"Your Honor admits it?" and the court replied, "Yes, sir," the court then and there admitted the will to probate, or at least counsel for the proponents so interpreted its action. Not until the court sustained the motion to strike, they say, did they know that the will had not been admitted to probate and that it was incumbent on them to have offered evidence to rebut the presumption of revocation.

The action of the trial court in admitting the proffered will and former order of probate had no such effect as that contended for by proponents and it is difficult to see how their learned and experienced counsel could have so misconceived it. From the proponents' standpoint the purpose of the proceeding was to have the paper admitted to probate. Had the court's reception of the tendered documents meant that the purported will was being admitted to probate, then the proponents would have attained their objective and there would have been no occasion to argue or consider the motion to strike their evidence. Only the entry of an order dismissing the jury and formally admitting the paper to probate would have been necessary to bring the proceeding to an end.

During the argument on the motion to strike, which is fully transcribed in the record, the proponents made no contention that the will had already been admitted to probate, or that they so understood. On the contrary, both sides submitted the case to the court for a decision on the evidence already adduced. The proponents claimed that they had made out a case which required the entry of an order admitting the paper to probate, while the contestants claimed that the physical condition of the paper with the marks thereon, and the circumstances under which it had been found among the decedent's valuables, indicated that it had been canceled and revoked and therefore could not be admitted to probate as a valid will. Moreover, in their argument, the contestants pointed out that under the holding in *Dickens* v. *Bonnewell, supra,* the *ex parte* order of probate was of no probative value in the present proceeding.

Thus this contention of proponents is entirely without merit. Obviously, the offered documents were merely admitted in evidence by the trial court in order that they might be considered in determining the issues involved.

As the trial court pointed out in its written opinion, the motion to reopen the case and hear additional evidence did not

come promptly upon the motion to strike or even during the argument thereon. It came after the announcement of the court's decision which had, in effect, disposed of the case on the merits. We agree with the lower court that the motion then came too late.

The remaining assignments of error, challenging the correctness of the lower court's rulings on the instructions and the motion to set aside the verdict, merely reassert the proponents' contentions as to the matters already dealt with.

The decree appealed from is without error and is

*Affirmed.*