## Richmond

Garfield A. McKenzie and William B. McLeod, Administrators of the Estate of Laura Virginia Francis, deceased, Et Al. v. Isaac Hathaway Francis, IV, and Anne Hathaway Francis.

June 11, 1973.

Record No. 8109.

Present, Snead, C. J., Carrico, Harrison, Cochran, Harman and Poff, JJ.

*James C. Breeden (Ammon G. Dunton; C. Jackson Simmons; Dunton, Simmons & Dunton,* on brief), for appellants.

*H. Marston Smith; William T. King (Smith & Murphy,* on brief), for appellees.

Poff, J., delivered the opinion of the court.

This will contest turns on the question of revocation by obliteration. Deciding as a matter of law against revocation, the chancellor admitted the will to probate, and we granted the contestants an appeal from the decree entered on December 2, 1971.

After the death of Laura Virginia Francis on April 30, 1970, a paper writing dated February 8, 1959, signed by the decedent and written wholly in her hand, was found in her personal effects and presented to the clerk of the court. Finding part of decedent's signature and the right-hand portion of each of the five pages of the instrument completely obliterated and illegible to the human eye, the clerk entered an order under Code § 64.1-77 refusing probate.

Under Code § 64.1-78, Isaac Hathaway Francis, IV, and Anne Hathaway Francis, identified by ultraviolet examination of the obliterated writing to be beneficiaries under the purported will (proponents), appealed the clerk's order. The chancellor assembled as parties contestant Garfield A. McKenzie and William B. McLeod, Administrators of the Estate of Laura Virginia Francis, deceased, Elizabeth Francis McKenzie, Ann McKenzie Rogers, and Elizabeth Bailey (contestants), framed the issue *devisavit vel non*, and under Code § 64.1-83 empaneled a jury to try the issue.

At the conclusion of all the evidence, the chancellor overruled contestants' motion to strike proponents' evidence[1] and sustained proponents' motion to discharge the jury and admit the paper writing to probate. To these several rulings contestants assigned error. Proponents waived their assignments of cross-error.

Code § 64.1-58 provides that a will can be revoked by certain methods in writing "or by the testator, or some person in his presence and by his direction, cutting, tearing, burning, obliterating, cancelling or destroying the same, or the signature thereto, with the intent to revoke."

The intent to revoke by mutilation can, under certain carefully defined circumstances, be presumed.

" '. . . [I]f a will produced for probate, which is shown to have been in the custody of the testator after its execution, was found among the testator's effects after his death, in such a state of muti-

---

[1] Contestants, having elected to introduce evidence, waived their exception to the chancellor's adverse ruling on their motion to strike made at the conclusion of proponents' evidence. *Carroll* v. *Richardson*, 201 Va. 157, 110 S.E.2d 193 (1959); *Interstate Veneer Co.* v. *Edwards*, 191 Va. 107, 60 S.E.2d 4 (1950); *Rawle* v. *McIlhenny*, 163 Va. 735, 177 S.E. 214 (1935).

lation, obliteration, or cancelation as represents a sufficient act of revocation within the meaning of the applicable statute, it will be presumed, in the absence of evidence to the contrary, that such act was performed by the testator with the intention of revoking the instrument. * * * Whatever presumption arises from acts of cancelation or mutilation is rebuttable, but the burden of the rebuttal rests upon the proponent.' " *Franklin* v. *McLean*, 192 Va. 684, 689, 66 S.E.2d 504, 506 (1951) (Quoting from 57 Am.Jur., *Wills* § 550, pp. 378, 379).

Citing *Sutherland* v. *Sutherland*, 192 Va. 764, 767, 66 S.E.2d 537, 539 (1951), contestants contend that "for the evidence to be sufficient to overcome the presumption it must be clear and convincing, leading to the conclusion that the will was not revoked." Not so. *Franklin* and *Sutherland* were decided at the same term of court. In *Franklin*, a will held in testator's custody after execution was found defaced in decedent's personal effects. In *Sutherland*, the will was never found. Purposefully, the court wrote two different rules fixing the burdens of proof required to overcome two different presumptions of revocation. The stronger the presumption is, the heavier the burden. Nonexistence of a will known to have existed once is a stronger predicate for a presumption of revocation than the existence of a will found in testator's personal effects, even if mutilated. Here, the rule in *Franklin* applies, and the presumption cast upon proponents the burden of producing "evidence to the contrary".

Such evidence need not be testimonial evidence. It may be physical and circumstantial. An examination of the physical condition of the will admitted to probate below shows that only a portion of the right-hand side of each page is obliterated; the remainder, including part of testatrix's signature, is clearly legible. Such a circumstance speaks to the question of intent. Had obliteration been total, the presumption that it was an act "performed by the testator with the intention of revoking" would be strong. Since total obliteration could have been achieved as readily as partial obliteration, partial obliteration is "evidence to the contrary".

Legal presumptions spring from probability based upon human experience and logic. If more than one fact can be inferred from a base fact and the inferences are equally strong, each tends to rebut the other. That the physical condition of the will raises an inference of accident equally as strong as an inference of purpose is reinforced by the testimony of proponents' expert witness, Ordway Hilton.

Hilton was a member of the American Society of Questioned Document Examiners, one of the organizers of the First International Meeting in Questioned Document Examination, and an author and lecturer in the field. Contestants conceded his qualifications and stipulated the accuracy of his summary of the will as deciphered from ultraviolet examination. He testified that the five pages of the will, encased with a pamphlet in an envelope, could not have reached the stage of obliteration in which they were found without soaking continuously in water for a period of at least three days. He concluded that, since the ink on none of the pages was smeared, "all of this damage occurred in the envelope and must have been completely dried out . . . before the envelope was ever opened." Hilton's testimony makes obliteration by accident equally as likely as obliteration by design. It is improbable that a testatrix who intended to revoke her will would fold the will in an envelope, immerse only one end of the envelope in water, leave it to soak for three days and thereafter, allow it to remain unopened and unexamined until it dried.[2]

We hold that proponents' evidence was sufficient to rebut the presumption.

■ With the presumption neutralized, the burden of proving revocation fell upon contestants. Jane Parker, a witness called by contestants, testified that in September 1967 decedent had told her that she had "spilled a drink on her will"; that "it was no good"; that she had "ruined it"; and that "you could not even read the signature". But she also testified that earlier in January 1967 while decedent was preparing to leave on a trip overseas she had overheard a telephone call in which decedent told her sister, Elizabeth Francis McKenzie, that, "I have just made a will and my bags are packed and I'm ready to go." Contestants' witnesses, Elizabeth Francis McKenzie and her husband, Garfield A. McKenzie, both confirmed that decedent had made the January 1967 telephone call and had told them that "I have just made a will."

Contestants failed to prove whether decedent had reference to the 1959 will or some subsequent will when she told Jane Parker that she had ruined her will. Contestants argue that in deciding whether to submit the question of revocation to the jury, the chan-

---

[2] In addition to Hilton's testimony, proponents introduced evidence that some time after the will was written, a water pipe burst in the room above the room where the will was found. Decedent's maid testified that she had been called the following day to mop the water in the upstairs room, but when asked if she had seen the water in the downstairs room, she replied in the negative.

cellor should have accepted the inference most favorable to contestants, i.e., that decedent had reference to the 1959 will. But such an inference is probative only if revocation by mutilation can be accomplished by ratification of mutilation caused by some unintended eventuality or accidental circumstance. Such is the rule in North Carolina. *Cutler* v. *Cutler*, 130 N.C. 1, 40 S.E. 689 (1902). Contestants ask us to adopt that rule. This we must decline to do. The General Assembly has precisely defined the several methods by which revocation may be accomplished. Revocation by mutilation can be accomplished under our statute only when the act of mutilation is performed "by the testator, or some person in his presence and by his direction . . . with the intent to revoke." If ratification of mutilation by accident or by the act of some person outside the presence of the testator or without his direction is to become one of the methods by which a properly executed will may be revoked, it must remain for the legislature to say so.

We are of the opinion that the chancellor did not err in holding as a matter of law that contestants failed to bear the burden of proving that obliteration was an act performed by the testatrix with intention to revoke her will.

*Affirmed.*