## Richmond

### Mary Lou Davenport Smith v. C. Thomas Mustian, Administrator, Etc., Et Al.

April 22, 1977.

Record No. 760353.

Present, All the Justices.

*James R. Scott, Jr. (White, Cabell, Paris & Lowenstein,* on brief), for appellant.

*C. Thomas Mustian (Edward E. Lane & Assocs.,* on brief), for appellees.

No brief for S. B. Mitchell and Mrs. S. B. Mitchell, appellees.

Compton, J., delivered the opinion of the court.

In this review of a final order entered in an *inter partes* probate proceeding, both litigants debate the legal effect of one of the provisions of the will and seek a construction of the entire document. Although not discerned by either party to this

proceeding, such a determination is beyond the jurisdiction of the probate court. Hence, the appeal will be dismissed as improvidently awarded. The issue arises in the following manner.

Isaac Freddie Davenport, the testator, died on September 19, 1974, when "in his eighties," in King William County. On January 10, 1975, the clerk of the court below admitted to probate the writing in question, Code § 64.1-77, over the objection of the attorney for contestant-appellant Mary Lou Davenport Smith, the testator's daughter. The two-page mostly typewritten, undated document is set out below complete with errors in spelling and syntax; the handwritten portions are italicized:

"Last Will And Tostament

Of

Isaac Freddie Davenport

"In The Names of God, Amen, I Isaac Freddie Davenport being of sound mind and diposing memory, but realizing the uncertainty of human life, do hereby make, ordain publish and declare this my Last Will And Tostament, in the manner and form following, hereby revoking all former wills and Codicils by me made.

"Item One

I direct that my Executor hereinafter named shall pay all may just debts and funeral expences as soom after my demise is practible. Put a head stone on my grave.

"Item Two

I give, devise, and bequeath the following names persons Mr. & Mrs. S. B. Mitchell of Aylett Virginia and Mr. Mrs. Mario & Martha Lipira. Mrs. Georgett Overton of 501-6th St. *27 West 23 St Deer Park L I N. Y.* Bedford, Indiana. My two step Daughters. The three above share equally.

### "Ttem Three

I bequeath that Mrs. Mary Smith be given Twenty-five dollars.

*Lou*

She is my Daughter, has not been to see me in the last four years. I don't know why.

### "Item Four

Mr. & Mrs. S. B. Mitchell have given me a nice home to put my trailer and lot me live there in peace, comfort, given me meals and made me one of the family.

### "Item Five

Mary Davenport took all my moneys out of Central Nationl Bank and First and Merchante in Ashland, Virginia. She did not leave me a dollar to eat on. If she is the longest living and things have not been settles up, that she be given only what the state shall allow her.
If it be one $\frac{1}{3}$ that is
what I give her. Not one dollar over. I am trying to get settled but she wants me to die so she can grab all but for God sake don't give her one cent.

### "Item Six

My watch and shot gum goes to my Grand son Kenneth Smith.

### "Item Seven

*Mr.*

Everything that is at Mrs. Mitchells is recorded at the courthouse in King William County, Virginia.

### "Item Eight

Mrs. Davenport is doing every thing she can to spend and make fall, So I don't really know what I can do. In am told I Can't put anything up for sale until that decide on what to do.
I don't really know what to do but wait until some date in October when the court Reconvenes, According to my Lawyer.
This is my Last Will And Testament

*Isaac Freddie Davenport"*

The signatures of three witnesses and a notary's certificate, dated November 7, 1973, appear below the foregoing text.

Five months after probate by the clerk and pursuant to a notice given on behalf of the contestant, the clerk entered an order allowing an appeal of right from the order of probate. Code § 64.1-78. The appeal was docketed, and Mario Lipira, Martha Lipira, Georgette Overton, C. Thomas Mustian (attorney for the Lipiras and Overton), S. B. Mitchell, and Mrs. S. B. Mitchell were properly convened as all the interested parties. Thereafter, an *inter partes* probate order was entered which fixed the date for a hearing and which framed the following issues:

"(1) Whether the undated paper writing, or any part thereof, is the true Last Will and Testament of Isaac Freddie Davenport, deceased.

"(2) Whether the undated paper writing, or any part thereof, is testamentary or dispositive in character."

The *inter partes de novo* hearing was on November 25, 1975 before the chancellor, sitting without a jury; only the contestant, by counsel, and the proponent-appellee Mustian, Administrator d.b.n.c.t.a. of Davenport's estate, appeared. The court examined the document in question and considered argument of counsel. No evidence extrinsic to the will was presented.

On January 28, 1976, the trial court entered an order probating the will. The record is silent as to the chancellor's reasons for his decision. The order recites that the parties came, by counsel, "to hear orally in open Court the evidence relative to the purported Will. . . ." The court found that the testator "possessed testamentary capacity at the time of the execution of the paper writing, notarized November 7, 1973" and "established and adjudged" such writing to be the Last Will and Testament of the deceased. We awarded the contestant an appeal from that order.

The contestant says the questions presented on appeal are:

"1. Can Item Two, by any rule of construction, be construed to constitute a residuary clause by which the entire estate of Isaac F. Davenport passes?

"2. Does what purports to be the Last Will and Testament of Isaac F. Davenport fail in whole or in part so that all or any

part of Mr. Davenport's estate passes by intestacy to Mary Lou Smith, his sole heir-at-law?"

Relying on text and case authorities dealing with will construction generally, contestant argues that "[t]o say what, if anything, is or would have been disposed of by Item Two is of necessity to engage in surmise and conjecture." She urges us to decide that, except for the specific bequests contained in Items Three and Six, Davenport died intestate and, therefore, we should determine that the remainder of the estate passes to her as the sole heir-at-law of her deceased father. As will become more significant, *infra,* this argument for partial intestacy carries with it, of necessity, the *concessum* that the deceased died testate, in part.

The proponent-administrator, on brief, also without focusing on the jurisdiction of the probate court, likewise embarks on a discourse about will construction generally. He argues Davenport created a residuary clause at the beginning of his will and then "extracted" therefrom the specific bequests. At the bar, we were told by the administrator, *dehors* the record, that Davenport's "natural circle of family and friends were all accounted for" in the will, *viz:* the daughter, Mary Lou Davenport Smith; two step-daughters, Overton and Lipira; the grandson, Kenneth Smith; and a wife, Mary Davenport, from whom he was estranged at the time of his death. The proponent says that "a reasonable person would conclude" from a review of the will that Davenport wanted his residuary estate to pass in equal shares to those persons named in Item Two, the Mitchells, the Lipiras and Overton. He argues the testator merely failed "to specifically write that he was leaving the remainder of his estate" to those named in Item Two, but notwithstanding this, the argument continues, the intention to establish Item Two as the residuary clause may be readily ascertained from what Davenport has written.

According to the trial memoranda, which are included in the record on appeal, the respective parties made precisely the same argument in the trial court as is now made on appeal. But the contentions made below, and here, are not at all responsive to the issues framed in the *inter partes* probate order, *supra.* And the trial court's order of probate was not responsive to the arguments made by the parties. So, as best we can determine from this sketchy record, which contains no transcript of the

November 25, 1975 *inter partes* hearing, the parties argued issues not presented and the court decided issues not argued. However, in spite of this bizarre set of circumstances, the orders in the record demonstrate conclusively (1) that the chancellor properly decided questions relevant to the probate proceeding, and (2) the parties sought determination of questions beyond the scope of probate.

In Virginia, the whole subject of the probate of wills is controlled by statute. *Tyson* v. *Scott,* 116 Va. 243, 250, 81 S.E. 57, 60 (1914). *See* Code § 64.1-75 *et seq.* The courts, trial and appellate, in the exercise of their probate jurisdiction, are "strictly and severely limited . . . to deciding the question whether or not the paper was the will of the decedent." B. Lamb, *Virginia Probate Practice* 68 (1957); *Thomas* v. *Best,* 209 Va. 103, 105 (note 3), 161 S.E.2d 803, 806 (1968); *Horn* v. *Horn,* 195 Va. 912, 918, 81 S.E.2d 593, 596 (1954). The jurisdiction of a court of probate does not extend to the ascertainment and enforcement of rights of property, but only to establish, preserve and perpetuate an important muniment of title. *Tyson* v. *Scott,* 116 Va. at 250, 81 S.E. at 60; *Coalter* v. *Bryan,* 42 Va. (1 Gratt.) 18, 77 (1844).

Ordinarily, the subject of will construction is beyond the province and jurisdiction of the probate court in the probate proceeding. *Rickard* v. *Rickard,* 134 Va. 485, 494, 115 S.E. 369, 372 (1922); Lamb, *supra* at 69. In some cases, however, it is necessary and proper for the probate court to construe the document in order to determine questions such as whether the instrument is testamentary in character. Lamb, *supra* at 70; 3 *Page on Wills* § 26.81, at 167 (Bowe-Parker Rev. 1961). *See Reeves* v. *White,* 136 Va. 443, 447, 118 S.E. 103, 104 (1923). "[T]he jurisdiction of probate courts to construe wills is merely ancillary or auxiliary to its jurisdiction to determine the testamentary nature of instruments offered for probate and to supervise the administration of estates." 4 *Page on Wills* § 31.1, at 172.

As we examine the orders in this proceeding, against the background of the foregoing settled principles, we see that the chancellor, in the *inter partes* order, framed properly the issues relevant to the probate of this document, that is, whether the writing, or any part of it, is the true will of the deceased and whether the writing is testamentary in character. The question

of the legal effect and construction generally of the writing was not framed as an issue, and correctly so. And then in the order of probate, the trial court decided issues which were proper to be decided during probate, that is, that the deceased possessed testamentary capacity at the time the writing was executed and further, that such writing was the last will of Davenport. Nowhere in this record is there evidence the chancellor purported to determine the legal effect, insofar as rights to property are concerned, of Item Two or any other clause in the document.

Consequently, it appears that the trial court properly was deciding one issue while the parties were debating another, *unless* we can say from this record that the chancellor made a construction of the instrument ancillary and incidental to the probate proceeding in order to determine whether the document was testamentary in nature. Such a conclusion may appear to have some validity because relied on here, and in the trial court, by the contestant is the case of *Coffman* v. *Coffman*, 85 Va. 459, 8 S.E. 672 (1888), which was a proceeding for admission to probate of a short two-paragraph instrument, *and*, according to the introductory synopsis preceding the opinion, for a determination of "its true construction and effect." (Appearing at 85 Va. 459 only). There, no question of probate jurisdiction was raised and probate was refused. The Court construed the writing and decided the deceased expressed no intention to make any disposition of his property *at all*, which was "equivalent in law to the absence of a testamentary intent *altogether*." 85 Va. at 468, 8 S.E. at 675 (emphasis added). At first glance, that case may appear to support contestant's position and buttress an argument that in reality here the trial court erroneously construed, incidental to probate, Item Two to be dispositive of Davenport's residuary estate and, hence, the instrument was improperly admitted to probate under *Coffman* because Item Two disposes of nothing at all.

If this be contestant's position, we reject it. She had asked us to rule the specific bequests of Items Three and Six valid. As we have said, such a request admits the decedent died testate, in part; this factor distinguishes this suit from *Coffman*, in which construction incidental to probate resulted in a holding that the document was invalid *in toto*. Probate courts "cannot refuse to admit a will to probate if any part thereof is valid, even though

most of the provisions in such will are invalid. If there is any property upon which the will can operate, it should be admitted to probate if otherwise valid." 3 *Page on Wills, supra* § 26.12, at 31-32. Indeed, the issue framed in the *inter partes* probate order reflected just this principle; the questions were whether the writing, *or any part thereof,* was the will of the deceased, or was testamentary or dispositive in character. Consequently, because there is no issue that the instrument was testamentary, in part, and there being property upon which the will can operate, the trial court was required to admit it to probate, leaving ascertainment and enforcement or rights of property to another proceeding. *Cf. First Church of Christ, Scientist* v. *Hutchings,* 209 Va. 158, 163 S.E.2d 178 (1968).

For these reasons, this appeal will be dismissed as being improvidently awarded, without prejudice to the right of any proper party to seek construction of this will in an appropriate proceeding.

*Appeal dismissed.*