Verna E. LARRICK *v.* Arthur LARRICK

CA 80-207                                      607 S.W. 2d 92
Court of Appeals of Arkansas
Opinion delivered November 12, 1980

*Harkey, Walmsley & Belew*, by: *John M. Belew*, for appellant.

*Reed & Irwin, P.A.*, by: *Michael E. Irwin*, for appellee.

MARIAN F. PENIX, Judge. Woodrow Larrick died June 27, 1979. His widow Verna Larrick, the appellant, petitioned to be appointed administratrix of Woodrow Larrick's estate, stating Woodrow Larrick died intestate. On July 23, 1979 the Probate Court of Cleburne County appointed Verna administratrix. On September 4, 1979, Arthur Larrick, brother of Woodrow Larrick, petitioned for the admission to Probate of the Last Will and Testament of Woodrow Larrick. Verna Larrick responded to the petition stating the Last Will and Testament had been destroyed thereby rendering it null and void. On February 29, 1980 the Probate Court found that Woodrow Larrick personally destroyed the original Will by tearing and burning it and that at the time of the destruction his intent was to immediately make a new will. However, he died suddenly. The Court found further the destruction was a revocation conditioned upon his making a new will and that he would prefer the terms of the destroyed will to intestacy. The Court applied the doctrine of dependent relative revocation and ordered the will admitted to probate. The widow Verna Larrick appeals.

Howard Speraw testified by deposition on behalf of Verna. He stated Woodrow Larrick, the day before his death, told him "I tore up my old Will and I have got to get one made out down here. I have got to get down and see a lawyer." He stated Woodrow at one time had told him his brothers were all well to do and had all they needed.

The widow Verna testified she observed Woodrow tear up the Will and set fire to it about a week before his death. She further testified she was the one who went to Hoyt Thomas' office, the lawyer who had prepared it, and took it home to Woodrow. She said he kept it two or three days before tearing it up. She said also Woodrow was planning to

make a new will which he said would be quite a bit different from the destroyed will.

Hoyt Thomas testified for Verna. He testified several weeks prior to Woodrow's death, he talked to Woodrow in front of the bank. Woodrow asked him how to effectively destroy his will. He admitted telling a Kansas lawyer, Mr. Grimshaw, he had not prepared a will for Woodrow. He said at the time he forgot having prepared the destroyed 1978 will. He went to the bank with Verna to look for a will but none was found. He then located a copy of the will in his office.

Verna, upon recall, testified she had misunderstood when she first testified having gone to Thomas' office and picking up the will and taking it to Woodrow prior to his death. She said she actually took Woodrow to the bank in the truck to get the will, but didn't go into the lock box with him. Verna's testimony reveals some inconsistencies and confusion.

Hoyt Thomas' secretary testified Verna had not been to his office to pick up a copy of the will within two weeks of Woodrow's death. She said she prepared the petition and other necessary papers necessary for appointing Verna Administratrix. She said she pulled the copy of the will and it became mislaid. She also said Thomas probably never saw the copy. She testified she didn't know at the time she prepared the Petition for Appointment of Administratrix whether or not the copy of the will was in the Larrick file.

Sam Morton, an employee of the Cleburne County Bank, testified for Arthur Larrick. He introduced the lock box rental form which had several signatures of Woodrow Larrick. The last signature "Woodrow Larrick" on June 5, 1979 appears to be different from the others. This was 22 days prior to Woodrow's death. Verna Larrick's name was not authorized to be on the lock box until after July 9, 1979. This authorization came from Jerome Johnson, president of the bank. He further testified the bank's policy was not to admit anyone but the person whose name appears on the lock box lease in the box.

Darlene Williams, a bank employee, testified she once let Verna sign Woodrow's name and enter the lock box. She also testified she matched signatures of customers she let into lock boxes and that the last signature of Woodrow Larrick did not match the others.

Arthur Larrick, appellee, testified as to how close he and Woodrow had been as brothers down to 1974 when Verna and Woodrow married. He said Woodrow told him he had a will under which he, Arthur, would receive $30,000. Woodrow told Arthur " . . . I have made a will and I have left you $30,000 and the rest goes to Verna, and I want you to be sure that you get this." This conversation occurred March 20, 1979, three months prior to Woodrow's death. He testified seeing Woodrow twice again between March 20 and his death and Woodrow did not mention he was going to destroy his will or make any changes in it. He said he called Verna on August 10, after receiving notice in a letter from Hoyt Thomas Woodrow had died intestate, and was told Woodrow had destroyed his will.

Jerome Johnson, president of the Cleburne County Bank, testified as to Verna's reputation for truthfulness and honesty and that her reputation is good. He also testified to having seen both Verna and Woodrow together when Verna would get the lock box and hand it to Woodrow.

It is the contention of Verna, the appellant, Woodrow intended to destroy the will and there is clear, cogent and convincing evidence he intended to destroy the will. Ark. Stat. Ann. § 60-406 provides:

Revocation by Written Will or by Act on Document. Except as provided in Section 23 [§ 60-407], a will, or any part thereof, can be revoked only
a. By subsequent will; or
b. By being burnt, torn, cancelled, obliterated, or destroyed, with the intent and for the purpose of revoking the same, by the testator himself or by another person in his presence and by his direction. . . .

The testimony of Verna Larrick was that Woodrow

Larrick destroyed his will because of conversations he had had with members of his family during his last trip to Kansas which indicated Verna was to get nothing. This testimony regarding destruction of the will is corroborated by the testimony of Howard Speraw. The Court found as a matter of fact Woodrow destroyed his will. We find substantial evidence to support this.

Verna further contends the Court's application of the doctrine of dependent relative revocation is in error. Verna contends the doctrine is not the law in Arkansas.

The Probate Judge, having found the will was destroyed, then applied the doctrine of dependent relative revocation. This is defined as:

> The doctrine which regards as mutually dependent the acts of one destroying a will and thereupon substituting another instrument for distribution of estate, when both acts are result of one plan, so that, if second act, through incompleteness or other defect, fails to accomplish its intended purpose, and it thereby becomes evident that testator was misled when he destroyed his will, act of destruction is regarded as bereft of intent of revocation and way for probate of destroyed will is opened. Black's Law Dictionary, Revised Fourth Edition, P. 525.

Wills — Dependent Relative Revocation, 8 Arkansas Law Review 193 (1953):

> Dependent relative revocation has long been a significant doctrine in the law of both England and the United States (cites omitted). The result of an application of this principle is that the efficacy of the revocation of an original will or some part thereof is relative to and dependent upon the validity of a new disposition. This doctrine is only invoked in the event that the testator intended to make another will, made an invalid will, or effected an invalid alteration of the original will; and proper application raises a rebuttable presumption that the deceased would prefer the original will to intestacy

In Section 267, 95 C.J.S. 35 at page 36 . . . .

the doctrine is subordinate to the rule which makes the intention of the testator paramount, so that its application is limited to cases in which it can operate in furtherance of the intention of the testator . . . . The doctrine should be applied with caution; and, it has been said, the tendency of modern cases is clearly to narrow the scope of its application. Thus, the mere fact that the testator intended to make a new will, or made one which failed of effect, will not alone, in every case, prevent a cancellation or obliteration of a will from operating as a revocation; and the doctrine can only apply where there is a clear intent of the testator that the revocation of the old will is made conditional on the validity of the new one.

There is some question whether or not this doctrine has ever been applied in Arkansas. In *Starnes* v. *Andre*, 243 Ark. 742, 421 S.W. 2d 616 (1967) Justice Fogleman stated the Court did not know of the doctrine having been applied in Arkansas and were unable to find facts to justify its application. Again in *Armstrong* v. *Butler*, 262 Ark. 31, 553 S.W. 2d 453 (1977) Justice Fogleman writing about the doctrine stated: "There is no place for the application of the rule here, as we understand it."

We can find no instance in Arkansas when this doctrine has been applied. Ark. Stat. Ann. § 60-408 seems to prevent the application of the doctrine here in Arkansas, even though there is some evidence in the record Woodrow intended to make a new will following the destruction of the 1978 will. Section 60-408 provides:

No will or any part thereof which shall be revoked, or which shall be or become invalid, can be revived otherwise than by re-execution thereof, or by the execution of another will in which the revoked or invalid will or part thereof is incorporated by reference.

As was said above, this statute would seem to preclude

the application of the doctrine of dependent relative revocation here in Arkansas.

In the 1979 case of *Parker* v. *Mobley*, 264 Ark. 805, 577 S.W. 2d 583 Justice Purtle wrote:

> If the decedent desired to reinstate his 1973 will, he could have easily followed the provisions of Ark. Stat. Ann. § 60-408. . . .

The Probate Judge found as a matter of fact that a few days before his death Woodrow Larrick personally destroyed the original of said will by tearing and burning it. The Judge further found it was Woodrow Larrick's intent to make a new will as a substitute for the will he was destroying, however, he died from a sudden attack before he made a new will. We, as appellate court, find substantial evidence to support the Probate Court's findings of fact. However, we disagree with the Court's application of the law to those findings of fact.

> The intentional physical destruction of the . . . will, in the manner required by law, left the testator without an existing will. Everyone is presumed to possess knowledge of the legal consequences of his acts or omissions. Whatever reason the decedent had, he failed to re-execute either of his known wills or publish a new one. Therefore, he died intestate. *Parker* v. *Mobley*, Supra at Page 586.

We find the Probate Judge erred as a matter of law in applying the doctrine of dependent relative revocation. Since we hold the doctrine cannot be applied to these findings of fact, the presumption Woodrow Larrick intended to revoke his will has not been overcome nor rebutted. We find it to be error to admit to probate the copy of the revoked will. We therefore reverse and remand to the Probate Court for proceeding with the administration of Woodrow Larrick's estate which we find to be intestate.

Reversed and remanded.

NEWBERN, J., concurs.

DAVID NEWBERN, Judge, concurring. I agree with that part of the majority opinion holding the facts in this case do not necessarily bring it within the doctrine of dependent relative revocation. I am, however, not willing to agree our statute, Ark. Stat. Ann. § 60-408 (Repl. 1971), "would seem to" preclude application of the doctrine in this state. The majority opinion, it seems to me, fails to recognize that the statute only comes into effect if there has been a "revocation." It is to determine precisely that question, *i.e.*, whether there has been a revocation, that the doctrine is applied.