## CIRCUIT COURT OF HENRICO COUNTY

In re Petition to Establish the Will
of Ruth McCuiston Terry,
a/k/a Hilda Ruth Terry, deceased

March 15, 1982

Case No. 81-C-308

By JUDGE L. PAUL BYRNE

The petitioners, Stephen P. Terry, Marvin D. Terry and Patricia M. Rapp, being the sole surviving children and heirs of Ruth McCuiston Terry, a/k/a Hilda Ruth Terry, deceased, filed this suit to establish an undated but executed typewritten document purporting to be her Last Will and Testament, which was found among the decedent's effects. At a hearing before this Court on June 19, 1981, the petitioners testified, as did William F. McCuiston, brother of the decedent, and Meritha C. McCuiston, his wife, the attesting witnesses.

The facts may be stated briefly as follows: The decedent, a widow, died on July 19, 1980, survived by the petitioners as her sole heirs at law. On or about July 21, 1980, the petitioner, Stephen P. Terry, found a signed copy of a typewritten instrument allegedly executed by the decedent in the presence of William F. and Meritha C. McCuiston, as attesting witnesses (Petitioners' Exhibit "1") in a buffet drawer belonging to the decedent. The instrument was not dated and in Article Two, page one, it contained a deletion and interlineation of the amount of a specific bequest to Patricia Ruth Mabe Rapp, the daughter of the decedent and a petitioner herein, the effect of which is to delete the amount "$25,000.00" and

interline the amount "$6,000.00". Some time later, it was testified that Stephen P. Terry found an original unsigned copy of the same instrument, which did not contain the above-mentioned deletion and interlineation, also, among the decedent's effects. (Petitioners' Exhibit "2"). Patricia M. Rapp and Marvin D. Terry, the remaining petitioners, also testified before the Court and all of the petitioners stated unequivocally that they desired the executed copy to be admitted to probate as the Last Will and Testament of their mother, the decedent.

William F. and Meritha C. McCuiston, then testified that they were the brother and sister-in-law of the decedent; that sometime in the late Fall or Winter of 1978, while visiting Mrs. Terry after her second heart attack, she advised them that she had a Will and asked if they would sign as attesting witnesses; they identified their signatures on the executed copy (Petitioners' Exhibit "1") and the signature of the decedent; that the executed copy was signed by the decedent and then signed by each of them in the presence of the decedent and each other. The attesting witnesses were unable to say that the deletion and interlineation in Article Two, page one, *supra.* had been done before the Will was executed.

When presented to the Clerk, the executed copy of the Will of the decedent (Petitioners' Exhibit "1") was denied Probate.

The sole issue in this cause is whether the executed and undated copy of the typewritten instrument purporting to be the Last Will and Testament of Ruth McCuiston Terry, deceased (Petitioners' Exhibit "1") has been revoked and invalidated by the deletion and interlineation of the amount in the specific bequest contained in Article Two, page one.

A careful study of our statute law and the cases decided by the Supreme Court of Virginia clearly show that the answer must be in the negative under the facts in the instant case. The requisites of form and execution of wills are prescribed by statute and the means and methods whereby a will, once validly executed and in proper form, may be revoked are prescribed by statute: Virginia Code Section 64.1-49 and Section 64.1-58. Briefly, revocation may be accomplished by will, or codicil, or any writing declaring an intent to revoke and executed

in the same manner as a will is required to be executed, or by the testator, or some one in his presence and by his direction, in "cutting, tearing, burning, obliterating, canceling or destroying the same or the signature thereto with the intent to revoke."

Ignoring for the moment the deletion and interlineation of the amount in Article Two, page one, the executed and undated copy of the instrument (Petitioners' Exhibit "1") under the evidence before the Court, meets all of the requirements as to form and execution of a witnessed will under Virginia Code Section 64.1-49, *supra*, and the Court so holds.

The remaining issue to be determined is the effect of the deletion and interlineation of the amount in Article Two, page one of the witnessed will, which reduces the bequest from "$25,000.00" to "$6,000.00". Such an act is defined in the case law and learned treatises on the subject as "partial revocation of a witnessed will."

When the subscribing witnesses cannot say, as in the instant case, that the deletion and interlineation were there when the will was executed; or they are unable to recall anything about them; then, if there is no evidence to indicate when or by whom the changes were made, and the surrounding circumstances are such that there is no presumption of law that the testator made them, we have a case in which the law applies a well settled doctrine "the doctrine of dependent relative revocation". *See Barksdale* v. *Barksdale*, 39 Va. (12 Leigh) 535 (1842); *Harris* v. *Wyatt*, 113 Va. 254 (1912); *Bell* v. *Timmins*, 190 Va. 648 (1950); *also*, B. Lamb, Virginia Probate Practice (1957), section 33V(a), p. 78, *et seq.* In such a situation, the law assumes that, if his whole testamentary intent cannot be carried out, the testator would rather prefer his first disposition to intestacy or *lapse into a residuary clause*; and that the revocation was conditional upon the new disposition being effective.

The doctrine is fully set out in Michie's Jurisprudence, *Wills*, section 46, pages 222 and 223, as follows:

> Under the doctrine of dependent relative revocation, if a testator cancels or destroys a will, or does any other act to vitiate it, with the present intention of making a new one immediately,

and the new will is not made, or if made fails of effect because not properly executed, or for any other reason, then the old will, having been conditionally revoked, still stands on the theory that if the testator is not able to carry out his whole testamentary intent in making the new will, *or in making changes in the old one*, then it is to be presumed that he prefers his old will to intestacy; that the revocation was conditioned upon the new testamentary disposition being effective. (Emphasis added).

Applying this doctrine to the facts in the instant case, it is clear that the witnessed will (Petitioners' Exhibit "1") should be probated as the Last Will and Testament of Ruth McCuiston Terry, deceased, as it was *originally written* and the deletion and interlineation of the amount in the specific bequest to Patricia Ruth Mabe Rapp in Article Two, page one, should be ignored. This Court so holds and the instrument will be probated as originally written, "I give, devise and bequeath to my daughter, Patricia Ruth Mabe Rapp, the sum of $25,000.00."

The petitioners having presented to the Court a letter dated August 8, 1980, signed by the Assistant Trust Officer of Central Fidelity Bank, the successor to Central National Bank, the executor nominated in the witnessed will, declining to serve in that capacity (Petitioners' Exhibit "3"), the Court will grant the unanimous request of the petitioners and the Clerk shall permit Stephen P. Terry to qualify as Administrator c.t.a. of the Estate of Ruth McCuiston Terry, a/k/a Hilda Ruth Terry, deceased, in accord with the applicable law.