## CIRCUIT COURT OF FAIRFAX COUNTY

In re Estate of
Bettie Van W. Taggert

December 30, 1992

Case No. (Fiduciary) 50431

BY JUDGE GERALD BRUCE LEE

This matter comes before the Court on Petitioners' Petition For Probate Inter Partes. While several interested persons have been served with the verified petition, Petitioners are the only parties in this *inter partes* proceeding to have made an appearance before the Court. Petitioners request that Ms. Taggert's will be probated and interpreted.

Having considered the argument and memorandum of counsel and for the reasons below, the Court finds that the will of Bettie Taggert should be probated. The Court declines to interpret the will since this is a probate proceeding and the Court lacks jurisdiction.

### Facts

Ms. Bettie Van W. Taggert had her will prepared in 1986 by a law firm in Arlington, Virginia. The will was last seen in February 1991 at which time interlineations were not present. That year Ms. Taggert contacted another law firm about the possibility of preparing a new will. She died on August 6, 1992.

The Petitioners made a diligent search of all her possessions, and they found her original attested will and no copies. Unfortunately the will that the Petitioners found has many provisions that are deleted with pencil and pen, and parts of two pages have been cut away. The cut pages were kept with the original will and were stapled together. Apparently, Ms. Taggert was attempting to reconfigure her will by cutting and stapling pieces together. The will also contains several

scribbled notations, including "out," "T & G Debt?," "? House" and "Mary Jane + Alan." The will is eight pages in length and contains fifteen articles.

The Clerk of Court refused to probate the will without an order of the Court. Petitioners appear before this Court having served a verified petition. They ask that the will be probated and interpreted.

*Discussion*

## I. *Will Revocation*

The first issue Petitioners present is whether the interlineations and additions to the will constitute a total revocation of the will.[1] The Court finds that the will has not been totally revoked and should be admitted to probate.

Whether a will can be revoked "in toto or pro tanto is statutory, depending largely upon the language of the statute." *Etgen v. Corboy*, 230 Va. 413, 417, 337 S.E.2d 286, 289 (1985) (quoting 62 A.L.R. 1367, 1392–93 (1929)). Code Section 64.1–58.1 of Va. Code Ann. (Repl. Vol. 1991), in pertinent part, provides:

> If a testator having an intent to revoke, or some person at his direction and in his presence, cuts, tears, burns, obliterates, cancels or destroys a will or codicil, or the signature thereto, or some provision thereof, such will, codicil or provision thereof is thereby void and of no effect.

Most of the Virginia case law in this area concerns the revocation of holographic wills. See, e.g., *Jessup v. Jessup*, 221 Va. 61, 267 S.E.2d 115 (1980); *McKenzie v. Francis*, 214 Va. 104, 197 S.E.2d 221 (1973); *Bell v. Timmons*, 190 Va. 648, 58 S.E.2d 55 (1950). In *Etgen v. Corboy* the Court held that an attested will could be partially revoked and that, consequently, markings on an attested will may not revoke a will in toto. 230 Va. at 417, 337 S.E.2d at 289. The *Etgen* Court, however, was interpreting Va. Code § 64.1–58,[2] which was repealed in 1985, and it noted that the new code section, Va. Code

---

[1] The third issue presented, whether the cutting of the first and second pages constitutes a total revocation, is similar analytically to the first issue and, therefore, is addressed in this section of the opinion.

[2] No will or codicil, or any part thereof, shall be revoked, unless by . . . the testator, or some person in his presence and by his direction, cutting, tearing, burning, obliterating, canceling or destroying the same, or the signature thereto, with the intent to revoke. Va. Code Ann. § 64–58 (Repl. Vol. 1980).

§ 64.1–58.1, set out in the text above, is materially different. *Id.* at 417, n. 1, 337 S.E.2d at 289, n. 1.

Upon the examination of the repealed section and the present section, the Court finds that the operative language regarding partial revocation of wills, whether holographic or attested, is essentially the same. Both provisions allow partial revocation by the testator if he obliterates, tears, burns, or performs other physical acts with the requisite intent. Interpreting the new provision in this manner would be consistent with other authorities consulted. *See* 79 Am. Jur. 2d, *Wills*, § 545 (1975 & Cum. Supp. 1991). Section 64.1–58.1 differs from the repealed section since it states that a revocation makes the thing revoked "void and of no effect." When read in conjunction with Va. Code § 64.1–60 (Repl. Vol. 1991), it is clear that the legislature intended this new provision to eliminate the doctrine that a revoked will can be revived. *See also* J. Rodney Johnson, *Wills, Trusts and Estates*, 19 U. Rich. L. Rev. 779, 781 (1985) (stating that the legislature intended to eliminate the doctrine of revival). The elimination of the doctrine of revival does not affect the ability of the testator to partially revoke an attested will. Accordingly, Virginia does allow the partial revocation of attested wills. A marked-up will is not automatically revoked in toto and may be only partially revoked.

However, a presumption exists that any significant partial revocation indicates the testator's intent to revoke the will entirely. *Jessup*, 221 Va. at 61–62, 267 S.E.2d at 125; *McKenzie*, 214 Va. at 104, 197 S.E.2d at 223. The presumption arising from acts of cancellation or mutilation is rebuttable, but the burden of rebuttal rests upon the proponent. *Jessup*, 221 Va. at 75–78, 267 S.E.2d at 124. In interpreting a will, a court looks at the will as a whole and where possible gives effect to all the provisions. When interpreting a mutilated will, the court must take the will as the testator left it, *id.* at 75, 267 S.E.2d at 124, examine what remains, *id.*, and determine the kind and degree of the mutilation. *Id.* at 78, 267 S.E.2d at 125. If a rational scheme of distribution does not remain upon consideration of the mutilation, the testator intended to revoke the entire will. *See id.* at 76, 267 S.E.2 at 124. The evidence used to rebut the presumption does not necessarily have to be testimonial and can be physical or circumstantial. *Id.* at 76, 267 S.E.2d at 125.

In *Jessup* the Court held that the destruction of a few pages constituted revocation of the entire will. In that case the remaining instru-

ment had no executor; was devoid of specific bequests; made only bequests to grandchildren, ignoring the testator's siblings and collaterals; and provided no guidance for the operation of a family business, the testator's lifetime devotion. 221 Va. at 76, 267 S.E.2d at 124.

By contrast, when the Court reads this instrument absent all of the stricken provisions, including the cutting, it forms a rational plan of distribution of the estate.[3] The instrument leaves all of Ms. Taggert's estate to her son and niece, who also would serve as her executors. There are several specific bequests in this will. The instrument is not mutilated to a great extent. Therefore, the instrument provides for a rational scheme of distribution. The presumption of revocation has been sufficiently rebutted and the will can be admitted to probate.

## II. *Probate Jurisdiction*

Petitioners also request the Court to construe the various partial revocations of the will. The Court notes that this matter is a probate proceeding. The Court's jurisdiction is limited, and accordingly, it will not address issues beyond the issue of whether the will has been revoked in toto.

In *Smith v. Mustian*, 217 Va. 980, 234 S.E.2d 292 (1977), the Supreme Court addressed the issue of the jurisdiction of a court in an *inter partes* probate proceeding. In that case, the parties challenged the validity of the will as well as its construction. The parties made arguments concerning the construction of the will before the lower court, and it refused to entertain them. 217 Va. at 985, 234 S.E.2d at 295. The parties then made the same arguments concerning the construction of the will before the Supreme Court. *Id.* Their appeal was dismissed as improvidently granted. *Id.* at 987, 234 S.E.2d at 297.

In Virginia the jurisdiction of probate courts is "strictly and severely limited to deciding the question whether or not the paper [is] the will of the decedent." *Id.* at 985, 234 S.E.2d at 296. The only time in which a probate court may construe an instrument is to determine whether it is testamentary in character. *Id.*; Brockenbrough Lamb, *Virginia Probate Practice* § 33 at 70 (1957). Once there is no issue that the instrument is testamentary in character and that there is property upon which the will can operate, the trial court is required

---

[3] Of course, the Court may not consider any additions to the will since this is an attested will and the additions must follow the formalities of an attested will. *Triplett's Ex'or v. Triplett*, 161 Va. 906, 919, 172 S.E. 162, 167 (1934) (dictum).

to admit the will and leave the ascertainment and enforcement of rights to another proceeding. *Smith*, 217 Va. at 987, 234 S.E.2d at 297.

In this instance, the Court construes the will only to determine whether the will is testamentary in character. As indicated above, the Court finds that the will is testamentary in character.

III. *Dependent Relative Revocation*

Furthermore, the Court finds that the doctrine of dependent relative revocation has not been abolished as Petitioners argue and that a chancery court will need to hear additional evidence regarding Ms. Taggert's intent to revoke or change her will.

In *Bell v. Timmons*, 190 Va. 648, 58 S.E.2d 55 (1950), Virginia adopted the doctrine of dependent relative revocation. The doctrine states that if the testator cancels or destroys a will, with the present intention of making a new one immediately and the new will fails for some reason, the old will still stands on the theory that the testator conditioned her revocation of the old will upon the validity of the new one. *Id.* at 659, 58 S.E.2d at 61.

The doctrine has been held to be applicable to attempted alterations and partial revocations. *See, e.g., In re Will of Terry*, 19 Va. Cir. 506, 508–09 (Henrico Co. 1982) (applying doctrine where testator marked through provisions of original will and made additions); *Oliver v. Union Nat'l Bank*, 504 S.W.2d 647, 650–52 (Mo. App. 1974) (same); *In re Estate of Uhl's*, 81 Cal. Rptr. 436, 439–40 (1969) (same); *Estate of Becklund*, 497 P.2d 1327, 1333 (Wash. App. 1972) (applying doctrine where testator attempted to partially revoke will by removing page); *see also Matter of Will of Collins*, 458 N.Y.S.2d 987, 992–93 (Sur. 1982) (applying doctrine where testator made changes in will and state does not recognize partial revocations). The doctrine would appear to be applicable in this case since Ms. Taggert deleted provisions and made additions without complying with the statutory requisites.

Petitioners argue that the General Assembly abolished the doctrine of dependent relative revocation in Virginia because it has eliminated revival as indicated *supra*. One commentator cited by Petitioners agrees. George P. Smith, Jr., 1 *Harrison on Wills*, § 154 at 53, n. 48.1 (3d ed. 1986 & Cum. Supp. 1992).

However, the doctrines of revival and dependent relative revocation are frequently confused. William M. McGovern, Jr., Sheldon F. Kurtz and Jan E. Rein, *Wills, Trusts and Estates*, § 5.2 at 200 (West

1988). For instance, in *Larrick v. Larrick*, 607 S.W.2d 92 (1980), the Arkansas Supreme Court stated that the lower court improperly probated a will, which otherwise would have been revoked, by applying the doctrine. The Court stated that the state's anti-revival statute precluded application of dependent relative revocation. The concurrence of Judge Newbern pointed out the error of this reasoning. The anti-revival statute "comes into effect if there has been a revocation. It is to determine precisely this question, i.e., whether there has been a revocation that the doctrine [of dependent relative revocation] is applied." *Id.* at 96. *See also* 95 C.J.S., *Wills*, § 267 at 34 ("The intention to revoke required for an effective revocation of a will must be or have become unconditional. In other words . . . if the revocation is subject to a condition which is not fulfilled, the revocation does not take effect.").

Accordingly, the Court finds that the General Assembly did not abolish the doctrine of dependent relative revocation when it eliminated revival and that, further, these two doctrines form separate concepts that are in no way dependent upon each other.

Dependent relative revocation can "only apply where there is a clear intent of the testator that the revocation of the old will is made conditional . . . ." 95 C.J.S., *Wills*, § 267 at 37. Thus, in a chancery proceeding, Petitioners should come forth with evidence indicating Ms. Taggert's intent with regard to the original will. This factual question of whether dependent relative revocation should be applied is a strong additional reason that further attempts to construe this will in a probate proceeding would be inappropriate.